815 So.2d 585 (2000)
Michael GILES
v.
STATE.
CR-98-2148.
Court of Criminal Appeals of Alabama.
September 29, 2000.
Rehearing Denied November 27, 2000.
Certiorari Denied September 7, 2001.
*586 Ralph Leon Liverman, Eutaw, for appellant.
Michael Giles, pro se.
Bill Pryor, atty. gen., and Andy Scott Poole, asst. atty. gen., for appellee.
Alabama Supreme Court 1000475.
COBB, Judge.
The appellant, Michael Giles, was convicted of robbery in the first degree, a violation of § 13A-8-41, Ala.Code 1975. Giles was sentenced to 15 years in prison, upon application of the Habitual Felony Offender Act, § 13A-5-9, Ala.Code 1975. Giles's counsel on appeal filed a "no-merit" brief. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Pursuant to this Court's order of February 10, 2000, Giles has submitted three issues for our consideration. In his first issue, Giles alleges that the trial court erred in finding that the State had articulated race-neutral reasons for its peremptory strikes in response to a Batson objection. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In particular, Giles raised a Batson objection to the strike of juror no. 8.
In Batson, the United States Supreme Court held that a prosecutor's use of peremptory strikes to remove African-American veniremembers from an African-American's jury solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment. 476 U.S. at 93, 106 S.Ct. 1712. In Ex parte Branch, 526 So.2d 609 (Ala.1987), the Supreme Court of Alabama established the procedural guidelines for making a Batson challenge. Initially, the party alleging discriminatory use of peremptory challenges must establish a prima facie case of discrimination. Ex parte Branch, 526 So.2d at 622. If a prima facie case is established, a presumption is created that the peremptory challenges were used to discriminate against jurors on the basis of race. Id. at 623. The State then has the burden of articulating a legitimate, nondiscriminatory reason for the challenge that relates to the particular case to be tried. Id. Once the State has articulated a race-neutral reason for striking the challenged juror, the moving party can offer evidence to show that the State's reason is a pretext or sham. Id. at 625. A trial court's ruling on a Batson objection is entitled to great deference, and we will not reverse the trial court's ruling unless it is clearly erroneous. Id. at 609.
Giles is African-American. During voir dire, the State used all of its 8 peremptory strikes to remove African-American veniremembers. (R. 65-66.) Giles objected to the State's strikes, pursuant to Batson. The trial court held a hearing, and asked the State to provide reasons for its strikes. With regard to juror no. 8, the following occurred:
"[Defense counsel]: Number 8.
"THE COURT: D.B.
"[Prosecutor 1]: The reason I gaveI don't know about these gentlemen, but the reason I have for [D.B.] is I know her and I know her husband very well. They are very, very religious people, and in my opinion even though she did not answer when asked about having a problem, whether they would have a problem sitting in judgment, I didn't feel she could. I struck her in another case, too. But that was my reason.
"[Prosecutor 2]: I think that is a sufficiently race-neutral reason. I had asked *587 a question in one of the cases about people who may have problems because of religion. She did not respond, and yet [Prosecutor 1] knows she is a highly religious person. And that is why she was struck.
"THE COURT: I'll say race neutral and leave a question mark."
Although the trial court did not specifically state that it found that the defense had established a prima facie case of racial discrimination, we have held that "even in the absence of a finding of a prima facie case by the trial court, if the prosecutor offers explanations for the state's peremptory challenges, this court will review those explanations." McCray v. State, 738 So.2d 911 (Ala.Crim.App.1998).
In Walker v. State, 611 So.2d 1133 (Ala. Crim.App.1992), we addressed a Batson claim similar to the one raised by Giles. In Walker, the State had used two peremptory challenges to strike African-American veniremembers and gave as a reason for its strikes their religious affiliations. Specifically, the State struck juror no. 68 because her husband was a preacher, and juror no. 123 because she was "very religious" and because the State thought she would not vote to impose the death penalty. This Court held in that case that "a prosecutor cannot simply presume, without further questioning to `dispel any doubt,' that a veniremember, who is under oath, did not answer a question truthfully merely because the prosecutor has hearsay evidence to the contrary." Id. at 1140. In addition, with regard to the strike of juror no. 68 and juror no. 123, we stated:
"We further find that the reasons for two other strikes were not race neutral under the circumstances before us: veniremember no. 68 because she was a minister's wife and veniremember no. 123 because he was `very religious.' These veniremembers did not respond when asked whether they had a fixed opinion against the death penalty or whether they not being absolutely opposed to it, `just [did not] like it,' or when asked whether any veniremember had `a personal, religious, or moral conviction against passing judgment on [his] fellow man.' `[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically' is evidence that the reason was a sham or pretext. Branch, 526 So.2d at 624 (quoting Slappy v. State, 503 So.2d at 355; noting as an example, `an assumption that teachers as a class are too liberal, without any specific questions having been directed to ... the individual juror showing the potentially liberal nature of the challenged juror')..... `"Group-based" strikes without "examination of [the] juror apparent in the record to determine any further information about the juror and the juror's competency to serve" caused our Supreme Court "great concern."` Parker v. State, 568 So.2d [335] at 337 [(Ala.Crim.App.1990)] (quoting Branch, 526 So.2d at 626 n. 13). Here, there is even stronger basis of concern, because in this case voir dire examination revealed that the two veniremembers in question did not possess the group trait assumed by the prosecutor. The prosecutor could have easily dispelled any doubt ... by asking a follow-up question specifically of each veniremember. He cannot, however, presume that, in the absence of a response to specific questioning as to whether the veniremember is in fact opposed to the death penalty, the veniremember would not vote in favor of the death penalty simply because the veniremember is very religious, is a minister, or a minister's wife, or even is a member of a particular denomination."
Walker v. State, 611 So.2d at 1140-41.
As was the case in Walker, the prosecutor in this case asked a specific question *588 related to the veniremembers' religious beliefs, and juror no. 8 did not respond. Also, there was no follow-up questioning of juror no. 8 by the State. The prosecutor knew that juror no. 8 was "very, very religious," and simply presumed that, as a result, she would not be able to sit in judgment of another person. This is precisely the type of action we found in Walker to be prohibited, and to constitute reversible error.
The dissent seeks to distinguish this case from Walker by arguing that the prosecutor here struck the juror based on personal knowledge, rather than an assumption of group bias. The prosecutor's own statement, however, discloses otherwise. The prosecutor stated that he knew that the juror was religious, and assumed that she could not sit in judgment of another person. That the juror would, in fact, be unable to sit in judgment, was not a fact within the prosecutor's personal knowledge, which is established by the prosecutor's explanation, "I didn't feel she could." (R. 4.) (Emphasis added.) Furthermore, when the prosecutor asked the veniremembers whether they would have a problem sitting on the jury, juror no. 8 did not respond. Thus, not only did the prosecutor make his strike based on a group bias, he did so in spite of the juror's lack of response to a specific question on this point. This case is, therefore, indistinguishable from Walker.
Furthermore, in Ex parte Branch, the Supreme Court of Alabama noted that, after the State articulates a race-neutral reason during a Batson challenge, evidence of disparate treatmenti.e., persons with the same or similar characteristics as the challenged juror who were not struckis sufficient to show that the proffered reason is a sham or a pretext. Although the prosecutor struck juror no. 8, an African-American, because she was "very religious," the record suggests that he did not strike a non-African-American minister. (R. 8.) Would not the prosecutor assume that a minister would be "very religious" and have difficulty sitting in judgment of another man? Rather than demonstrating the absence of a group bias, as the dissent suggests, we believe that this disparate treatment indicates that the reason given for striking juror no. 8 was merely a pretext.
For the above reasons, we find that the State did not produce a legitimate nondiscriminatory reason for striking juror no. 8, and that the trial court's denial of Giles's Batson challenge regarding juror no. 8 was clearly erroneous. Accordingly, Giles's conviction is due to be reversed. Due to our resolution of this issue, we need not address Giles's other allegations of error.
REVERSED AND REMANDED.
McMILLAN, J., concurs. LONG, P.J., concurs in result. FRY, J., dissents, with opinion, joined by BASCHAB, J.
FRY, Judge, dissenting.
I respectfully disagree with the majority's decision that the trial court's denial of Giles's Batson objection was clearly erroneous. The majority interprets our holding in Walker v. State, 611 So.2d 1133 (Ala.Crim.App.1992), as requiring a reversal. I disagree.
The law in Alabama is clear that "`[a]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically' is evidence that the reason was a sham or a pretext." Walker, 611 So.2d at 1141, quoting Ex parte Branch 526 So.2d 609, 624 (Ala. 1987). Moreover, a prosecutor cannot "presume that, in absence of a response to specific voir dire questioning as to whether the veniremember is in fact opposed to *589 the death penalty, the veniremember is very religious, is a minister or minister's wife, or even is a member of a particular denomination." Walker, 611 So.2d at 1141. However, a prosecutor's personal knowledge about a veniremember can provide a race neutral reason for a strike. See Weaver v. State, 678 So.2d 260 (Ala.Crim. App.1995), rev'd on other grounds, 678 So.2d 284 (Ala.1996)(prosecutor's "personal knowledge" that potential juror's brother had been prosecuted by district attorney's office was race-neutral reason for a strike); McLeod v. State, 581 So.2d 1144, 1154-55 (Ala.Crim.App.1990)(on the basis of personal knowledge, prosecutor refuted veniremember's assertion that he had previously served on a jury that had returned a guilty verdict in a cocaine case and reason for strike was race-neutral.).
In Walker, the prosecutor represented to the trial court that he struck juror no. 68 because she was the wife of a minister and struck juror no. 123 because he was "very religious." The prosecutor stated that his information about juror no. 68 was provided by a juvenile probation officer, who believed that juror no. 68 was compassionate. The prosecutor stated that his information on juror no. 123 was provided by one of his investigating officers who knew the juror and her husband. This Court concluded that because the prosecutor did not ask any follow-up questions of the prospective jurors, but based his explanations on representations made by others, "the record offer[ed] nothing to give validity to the prosecutor's assumption about these two veniremembers." Walker, 611 So.2d at 1141. In Walker, the prosecutor unequivocally indicated that the prosecutor did not personally know juror no. 68 or juror no. 123 and that his reasons for striking them were entirely based on hearsay information. This Court stated in Naismith v. State, 615 So.2d 1323, 1326 (Ala.Crim.App.1993), "[b]oth Walker and Williams [v. State, 620 So.2d 82 (Ala.Crim. App.1992) ] support the principle that a prosecutor, in exercising a peremptory strike, may not always rely on hearsay information obtained from a law enforcement officer."
The facts of this case are clearly distinguishable from those in Walker. The prosecutor in this case did not rely on hearsay information; he relied on his personal knowledge of juror no. 8. His reason was not based on an assumption of group bias but on his personal observations outside the courtroomof the juror and her religious convictions. I believe that a prosecutor's personal knowledge should be accorded deference. In stating that he believed that juror no. 8's religious convictions would prevent her from sitting in judgment, the prosecutor acknowledged that the juror had not responded to a general question in that regard in voir dire. However, the prosecutor further stated that based on his personal knowledge of the juror's religious beliefs, he believed she was not being candid. His reason for striking juror no. 8 was not based on mere suspicion, but was accompanied by his personal knowledge of juror no. 8 and his belief that her religious beliefs would prevent her from being a fair juror. Thus, the prosecutor considered that the trait applied to juror no. 8 specifically and provided a race-neutral reason based on his personal knowledge for striking juror no. 8.
Moreover, the record simply does not support a conclusion that the prosecutor was engaging in stereotyping, which clearly would require further voir dire. The majority correctly notes, "This court held in [Walker] that `a prosecutor cannot simply presume, without further questioning to "dispel any doubt," that a veniremember, who is under oath, did not answer a question truthfully merely because *590 the prosecutor has hearsay evidence to the contrary.' Id. at 1140." This is not a case of "self-imposed ignorance" on part of the prosecutor. Because the prosecutor's explanation was based upon his personal knowledge, it was not based upon a presumption. I do not believe that additional voir dire was required.[1] Once the prosecutor stated that his strike was based on personal knowledge and the trial court determined that the reason was race-neutral it became incumbent upon the appellant to show that the reason was pretext or sham. Ex parte Branch, 526 So.2d at 625. The appellant did not present any such rebuttal evidence.
Furthermore, I do not believe that the prosecutor's representation with regard to juror no. 8 conflicts with the fact that he did not strike a non-African-American minister. The prosecutor's representation that his strike was based on personal knowledge of juror no. 8 dispels the assumption that he made the strike based on the presumption that anyone involved in religious work or who maintained strong religious convictions would be biased. His answer clearly indicated that his conclusion that juror no. 8's religious convictions would inhibit her from sitting in judgment were tailored specifically to his knowledge of juror no. 8. I simply cannot presume, as the majority does, that the prosecutor engaged in disparate treatment when the record does not contain the representations made by the non-African-American minister during voir dire.
An appellate court's review of a trial court's determination on a Batson objection is confined to determining whether the finding was clearly erroneous. Because I believe that the facts of this case do not support a finding that the trial court's determination was clearly erroneous, I must respectfully dissent.
NOTES
[1] This Court recently stated in Smith v. State, 797 So.2d 503, 518 (Ala.Crim.App.2000), "`In the absence of a religious belief that may directly affect a vernireperson's ability to serve on a jury in a particular case, religious beliefs are not relevant to the voir dire process and questions regarding religious beliefs should be disallowed.'" Quoting Judge McDonald's concurring opinion in State v. Hodge, 248 Conn. 207, 268, 726 A.2d 531, 564 (1999).