PARKER, Justice.
Christopher Anthony Floyd petitioned this Court for a writ of certiorari to review the decision of the Court of Criminal Appeals affirming Floyd’s capital-murder conviction- and 'his subsequent sentence of death. See Floyd v. State, 190 So.3d 940 (Ala.Crim.App.2007) (opinion on return to remand). We granted certiorari review to consider whether the Court of Criminal Appeals, following its plain-error review, fáiléd to recognize as prejudicial any plain error it found in the proceeding in the trial court. Specifically, we granted certiorari review to consider 1) whether the State used its peremptory challenges in a discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), 2) whether the trial court properly excluded certain of Floyd’s statement's to police as inadmissible hearsay, and 3) whether the trial court properly denied Floyd’s motion for a new trial based on allegedly newly discovered evidence. . We reverse the Court of Criminal Appeals’ decision based on the Batson issue and remand* the matter for proceedings consistent with this opinion.

Facts and Procedural History

In its opinion on original submission, the Court of Criminal Appeals summarized the relevant procedural history as follows:
“The appellant, Christopher Anthony Floyd, was convicted of capital murder for intentionally murdering Waylon Crawford during the course of a robbery. See §' 13A-5-40(a)(4), Ala.Code 1975.. The jury recommended by a vote of 11 to .1 that Floyd be sentenced to death. The trial court accepted the jury’s recommendation and sentenced Floyd to death. This appeal followed.”
Floyd, 190 So.3d at 945.[1]
One of the issues raised by Floyd on appeal in the Court of Criminal Appeals was that his due-process rights were vio *974 lated when the prosecution used .its peremptory challenges to remove African-American and female jurors .from the jury venire, thus violating Batson and J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Floyd had faded to make a Batson .objection, so the Court of Criminal Appeajs applied the plain-error standard in its review of this issue. After such review, the Court of Criminal Appeals , held, .in its opinion on original submission, that the record supplied an inference of race- and gender-based discrimination on the part of the State. Floyd, 190 So.3d at 961. Accordingly, the Court of Criminal Appeals stated:
“Based on the foregoing, we remand this case to the circuit court with' directions that that court hold a Batson and J.E.B. hearing. See Lewis v. State, 24 So.3d 480 (Ala.Crim.App.2006). If the prosecution cannot provide race-neutral reasons for its use of peremptory challenges against African-American jurors and gender-neutral reasons for its use of peremptory challenges against female jurors, then Floyd, shall be entitled to a new trial....
“The circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 90 days of the release of this opinion. The return to remand shall include a transcript of the remand proceédings conducted by the circuit court and the circuit court’s specific findings of fact.”
190 So.3d at 948.
On remand, the trial court conducted a Batson and J.E.B. hearing and entered an order, stating, in pertinent part:
“The Court directed the district attorney’s office to state on the record its reasons for striking 10 of 11 African-Americans. Those reasons are as follows: [1] ■
[[Image here]]
“Juror number 58: [I.C.], black female, the. State could not remember why she was struck. She was the State’s sixteenth strike.
[[Image here]]
“The Court also directed that ■ the State go forward and give its reasons for striking females in addition to those black females listed above..-.. The State could not remember why. it struck juror number 5: [T.A.M.]. The jury was comprised of six males and six females. This Court finds that the State has presented race- and gender-neutral reasons for its strikes with the exception of juror [I.C.], a black female, and juror [T.A.M.], a white female. However, not remembering is not tantamount to discrimination. It appears inconsistent that the State-would give a reason for its strikes of other African-Americans and females and yet strike these two individuals based on race or gender.
“This .Court notes that heretofore a Defendant must make a Batson motion for this Court to address the issue. If the issue had been raised at the proper time, the Court would have made the State give its reasons for its strikes. This Court has repeatedly made the State give its reasons for its strikes of African-Americans even where there was a lack of a prima facie showing of discrimination. This way all parties know the Court will not tolerate discriminatory strike's. The State has been aware of this practice for years. It is unlikely that the State would make a [peremptory] strike on the basis of illegal race or gender grounds. However, in this case there was never a motion made.
“Based on the foregoing it is the judgment of-this Court that the State gave .race- and gender-neutral reasons for its strikes.” ■
*975 On return to remand, the Court of Criminal Appeals affirmed Floyd’s ■ conviction and sentence, upholding the trial court’s determination of the Batson issue,'as follows:
“The court ... concluded that the State had been unable to articulate race- or gender-neutral reasons for striking jurors no. 5 and 58, but that failing to remember its reasons for a strike was not tantamount to discrimination; the court further found that it would • be inconsistent for the prosecution to have removed those two jurors for: improper reasons, particularly in light of the-fact that the prosecution was aware that the trial court, as a matter of routine, required the State to articulate its reasons for strikes had the defense merely made a timely Batson motion. Although we express no opinion as to the trial court’s rationale for finding that the State had articulated race- and gender-neutral reasons for striking jurors no. ,5 -and. 58, we note that our review of the supplemental record indicates that the prosecution did articulate the following reasons for these two strikes. The prosecutor stated that he struck juror no. 5 because of her, age and because his initial impression of her was that she would not make a favorable juror for the State. In light of the prosecutor’s detailed explanation at the Batson hearing on remand as to his ■ method of striking jurors — that he first gathers information regarding their previous jury service, and any legal transgressions, and solicits recommendations from law enforcement, that he then makes a notation on his jury strike list as to his initial impressidn of the juror at voir dire, and that he makes modifications of that initial impression based on the prospective juror’s responses, conduct, demeanor, ■ etc., during voir- dire before deciding how to exercise his strikes — we find no indication in the record that juror no. 5 was struck for an improper reason or that the strike resulted in disparate treatment.
“Similarly, with regard to prospective juror no. 58, the prosecution stated that she was struck because she did not respond to any questions during voir dire. We note that the prosecution articulated nonresponsiveness as a ground for striking jurors no. 19, 23, and 35. The defense argued that jurors no. 8 (Caucasian female) and 21 (Caucasian male) served on the ' jury despite failing to respond to any questions during voir dire. The prosecution noted that juror no. 8 had served oh. a jury in 1996 that voted to convict the accused in a criminal case. In light of the fact that a number of convictions from Houston County have been reversed as a result of Batson violations, and in light of the fact that this Court remanded this case for the trial court to conduct a Batson and' J.E.B. hearing, the trial court was certainly aware of the potential for abuse. After careful review of the facts and circumstances in this case and relevant legal authority, and with appropriate consideration for the heightened scrutiny in a case such as this where the defendant has been sentenced to death, the strike of juror no. 58 simply did not evidence disparate treatment based on the record before this Court. Based on the foregoing, we conclude that the trial court’s ruling was not clearly erroneous. Accordingly, no basis for reversal exists as to this claim.”
Floyd, 190 So.3d at 966 (footnote omitted).
Floyd filed a petition for a writ of certio-rari with this Court,-which we granted, seeking review of the Court of Criminal Appeals’ decision. '

Discussion

Floyd argues that, the State’s “failure to provide valid race-neutral rea *976 sons for the, strikes of jurors 5 [and] 58 establish that the State illegally removed prospective jurors based on race and gender.” Floyd’s brief, at p. 9. This issue was not raised in the trial court; it was brought to the Court of Criminal Appeals’ attention on direct appeal and was thus subject to a plain-error review.
“ ‘ “ ‘For plain error to exist in the Batson context, the record must raise an inference that the state [or the defendant] engaged in “purposeful discrimination” in the exercise of its peremptory challenges. See Ex parte Watkins, 509 So.2d 1074. (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).’ ” ’
“Smith v. State, 756 So.2d 892, 915 (Ala.Crim.App.1998), aff'd, 756 So.2d 957 (Ala.2000) (quoting Rieber v. State, 663 So,2d 985, 991 (Ala.Crim.App.1994), quoting in turn other cases).”
Ex parte Walker, 972 So.2d 737, 742 (Ala.2007). In Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), the Supreme Court of the United States set forth the process for evaluating Batson claims:
“In Batson, we outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. 476 U.S., at 96-98. The analysis set forth in Batson permits prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Id., at 96-97. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Id., at 97-98. Finally, the trial court must determine whether the defendant has carried, his burden of proving purposeful discrimination. Id., at 98.”
In Ex parte Branch, 526 So.2d 609, 622-24 (Ala.1987), this Court set forth our interpretation of the Batson three-step process set forth above:
“The burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination. In determining whether there is a prima facie case, the court is to consider ‘all relevant circumstances’ which could lead to an inference of discrimination. See Batson, 476 U.S. at 93, 106 S.Ct. at 1721, citing Washington v. Davis, 426 U.S. 229, 239-42, 96 S.Ct. 2040, 2047-48, 48 L.Ed.2d 597 (1976).
[[Image here]]
“After a prima facie case is established, there is a presumption that the peremptory challenges were used to discriminate against black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. The ■ state then has the brn-den of articulating a clear, specific, and legitimate reason for the challenge which relates to the particular case to be tried, and which is nondiscriminatory. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. However, this showing need not rise to the level of a challenge for cause. [Ex parte ] Jackson, [516 So.2d 768 (Ala.1986)]; [State v.] Neil, 457 So.2d [481,] 487 [(Fla.1984) ]; [People v.] Wheeler, 22 Cal.3d [258,] 281-82, 583 P.2d [748,] 765, 148 Cal.Rptr. [890,] 906 [ (1978) ].
“In addition to a clear, .specific, and plausible nondiscriminatory explanation of a Specific characteristic that affected the decision to challenge, the following are illustrative of the types of evidence that can be used to overcome the presumption of discrimination, and show neutrality:
*977 “1. The state challenged non-black jurors with the same or similar characteristics as the black jurors who were struck.
“2. There is no evidence of a pattern of strikes used to challenge black jurors; e.g., having a total of 6 peremptory challenges, the state used 2 to strike black jurors and 4 to strike white jurors, and there were blacks remaining on the veni-re.
“Batson makes it clear, however, that ‘[t]he State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the State must demonstrate that “permissible racially neutral selection criteria and procedures have produced the monochromatic' result.’” Batson, 476 U.S. at 94, 106 S.Ct. at 1721, citing Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972). Furthermore, intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumptidn'of discrimination. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. Finally, a prosecutor cannot overcome the presumption ‘merely by denying any discriminatory motive or “affirming his good faith in individual selections.’” Batson, 476 U.S, at 98, 106 S.Ct. at 1723, citing Alexander, 405 U.S. at 632, 92 S.Ct. at 1226.
“Once the prosecutor has articulated a nondiseriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. Wheeler, 22 Cal.3d at 282, 583 P.2d at 763-64, 148 Cal.Rptr. at 906. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
“1. The reasons given áre not related to the facts of the case.
“2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions. •
“3. Disparate treatment — persons with the same or similar characteristics • as the challenged juror were not struck. Slappy [v. State], 503 So.2d [350,] 354 [ (Fla.Dist.Ct.App.1987) ]; [People v.] Turner, 42 Cal.3d [711,] 725, 726 P.2d [102,] 110, 230 Cal.Rptr. [656,] 664 [ (1986) ]; Wheeler, 22 Cal.3d at 282, 583 P.2d at 760, 148 Cal.Rptr. at 906.
“4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that-is likely to disqualify the juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
“5. The prosecutor, having 6 peremptory challenges, used 2 to remove the only 2 blacks remaining on the veni-re. Cf. Slappy, 503 So.2d at 354; Turner, 42 Cal.3d at 715, 726 P.2d at 103, 230 Cal.Rptr. at 657. -
“6. ‘[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.’ Slappy, 503 So.2d at 355. For instance, an assumption that teachers as a class aré too liberal, without any specific questions having been directed to the panel or the individual juror showihg the potentially liberal nature of the challenged juror.”
(Footnote omitted.)
In the present case, the Court of Criminal Appeals held that the record supplied an inference of racial- and gender-based discrimination on the part of the State. See Branch, 526 So.2d at 622 (stating that the first step in the three-step Batson process is to establish a prima facie case that the State used its peremptory strikes in a discriminatory manner). Therefore, under Batson, the burden then shifted to the prosecutor to articulate race- *978 and gender-neutral reasons for striking the African-American-and/or female jurors it struck. Because Floyd’s trial counsel did not raise a Batson challenge in the trial court, it was necessary for the Court of Criminal Appeals to remand the matter for a Batson hearing concerning steps two and three of the Batson- process- to allow the State to present its reasons for striking each African-American and/or female juror it struck and to allow Floyd to argue that the State’s offered reasons were merely sham or pretext.
We hold that the trial court failed to comply with the Court of Criminal Appeals’ remand order. Specifically, the trial court did. not enter .specific findings concerning the reasons the State offered as to why it struck the African-American and/or female jurors it struck., We,also note that the Court of Criminal Appeals improperly performed the trial courts,role by finding that the State’s reasons for striking jurors no. 5 and no. 58, which the Court of Criminal Appeals located in the record but which were unaddressed by the trial court, were nondiscriminatory. . It is the trial court’s function, as recognized by the ore tenus standard of review, based, on its observation of the voir dire process, to determine whether the State offered nondiscriminatory reasons for using its peremptory strikes to remove minorities from the jury venire arid to “determine whether the defendant has carried his burden of proving purposeful discrimination.” Hernandez, 500 U.S. at 359, 111 S.Ct. 1859; see also Whatley v. State, 146 So.3d 437, 454 (Ala.Crim.App.2010) (opinion on retürn to remand)(“ ‘After the 'government articulates such reasons, ’the [trial] court must evaluate the credibility of the stated justi-fieations based on the evidence placed before it.’ ” (quoting United States v. Houston, 456 F.3d 1328, 1335 (11th Cir.2006))). Therefore, it is necessary to reverse the Court of Criminal Appeals’ judgment concerning the Batson issue.

Conclusion

Based on the Batson issue we reverse the Court of Criminal Appeals’ judgment. Further, we remand the case to that court and instruct the Court of Criminal Appeals, in turn, to reimand the case with directions to the trial court to make necessary findings of fact and conclusions of law on ' the following issues: whether the State’s offered reasons for striking the African-American jurors it struck were race neutral;, whether the State’s offered reasons for striking the female jurors it struck were gender neutral; and “whether the defendant has carried his -burden of proving purposeful discrimination.” Hernandez, 500 U.S. at 359, 111 S.Ct. 1859; see also the Court of Criminal Appeals’ opinion on original submission.[2]
REVERSED AND REMANDED WITH DIRECTIONS.
WOODALL,. STUART, and MAIN, JJ., concur. .
MALONE, C:J., and BOLIN and MURDOCK, jj;, concur in the result.
. SHAW and WISE, JJ., recuse themselves.*

. A full factual summary is set forth in the Court of Criminal Appeals’, opinion on return to remand concerning the murder and the circumstances leading up to and surrounding the murder. Because -those facts are not crucial to our analysis of the issue before us, we have omitted them from this opinion.

. As noted earlier, we granted certiorari review on other issues as well. However, based upon our reversal of the Court of Criminal Appeals’ decision’on this issue, we pretermit discussion of those other issues.