After Remand from the Alabama Supreme Court

On’ September 28, 2012, the Alabama Supreme Court issued an opinion reversing this Court’s judgment and directing it to remand this case to the Circuit Court of Houston County with specific instructions. Ex parte Floyd, 190 So.3d 972 (Ala.2012). Pprsuant to that opinion, on remand, the circuit court is ordered to make all necessary findings of. fact and. conclusions of law concerning: “whether the State’s offered reasons for striking the African-American jurors it struck were .race neutral; whether the State’s offered reasons for striking the female jurors it struck were gender neutral; and ‘whether the defendant has carried his burden of proving purposeful discrimination.’ Hernandez[ v. New York, 500 U.S. 352,] 359 [(1991)]; - see also the Court of Criminal Appeals’ opinion on original submission.” 190 So.3d at 978. (Footnote omitted).
*990 The circuit court shall file its return to this Court within 56 days of the date of this opinion.
REMANDED ,. WITH' INSTRUCTIONS.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.

On Return to Second Remand

BURKE, Judge.
Christopher Anthony Floyd was convicted of capital murder for intentionally murdering Waylon Crawford during the course of a robbery. See § 13A-5-40(a)(4), Ala. Code 1975. Following the jury’s advisory recommendation of death, the trial court sentenced Floyd to death. On September 28, 2007, this Court remanded this case to the trial court to hold a hearing pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), during which the prosecutor was to come forward with race-neutral and gender-neutral reasons for his strikes. If the prosecutor was unable to do so, Floyd was to be entitled to a new trial. ' On September '29, 2008, following the trial court’s return to remand, this Court affirmed Floyd’s capital-murder conviction and sentence to death. Thereafter, on September 28, 2012, the 'Alabama Supreme Court reversed this Court’s decision and remanded the ease'with directions to this Court based on the trial court’s failure to enter specific findings as to the reasons offered by the State for its 'strikes of African-American and female potential jurors. This case was then remanded to the circuit court for a second time pursuant to the Alabama Supreme Court’s decision with directions to make all necessary findings of fact and conclusions of law concerning: “[Wjhether the State’s offered reasons for striking the African-American jurors it struck were race neutral; whether the State’s offered reasons for striking the female jurors it struck were gender neutral; and ‘whether the defendant has carried his burden of proving purposeful discrimination.’ Hernandez[ v. New York, 500 U.S. 352,] 359 [(1991)]; see also the Court of Criminal Appeals’ opinion on original submission.” 190 So.3d at 978 (footnote omitted).
The trial court has filed a second return to remand, including Floyd’s proposed order arguing that he had met his burden of proving purposeful discrimination by the prosecutor and that the State had failed to provide race-neutral and gender-neutral reasons for its strikes.
' The trial court entered an order, finding that the first of the three-step analysis for determining whether the State used its strikes in a discriminatory manner had been determined by this Court on direct appeal. Batson v. Kentucky, 476 U.S. at 97, 98, 106 S.Ct. 1712 (“Once the defendant makes a prima, facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors..... The ferial court then will have the duty to determine if the defendant has established purposeful discrimination.”). See also McCray v. State, 88 So.3d 1, 17 (Ala.Crim.App.2010) (“In evaluating a Bat-son, or J.E.B., claim, a three-step process must be followed. As the United States Supreme Court explained in Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003): ‘First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race'. [Batson v. Kentucky,] 476 U.S. [79,] 96-97[, 106 S.Ct. 1712, 1723 (1986) ].. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Id., at 97-98. Third,' in light of the parties’ submissions, the trial court must determine whether the defendant has shown purposeful discrimination. *991 Id., at 98. 537 U.S. at 328-29, 123 S.Ct. 1029.”). On direct appeal of this case, this Court determined that a prima facie case of racial and gerider discrimination had been established. Floyd v. State, [Ms. CR-05-0935, September 28, 2007] 190 So.3d 940 (Ala.Crim.App.2007[1]). Thus, as found by the trial court, the first step of a showing of discrimination in striking the jury was met.
In its order on return to second remand, the trial court stated that Floyd is white and the jury was all white except for the alternate juror, who was African-American. The court had directed the State to provide reasons for its 10 strikes of the 11 African-American potential jurors. The court outlined the State’s reasons as having been as follows:
“Juror number 28: [P.B.], black female, was struck because' she had 32 bad check cases and her probation had been revoked. This was the State’s first strike.
“Juror number 43: [J.B.], black male, had been convicted of harassment twice and had 12 traffic tickets. He was the State’s second strike.
“Juror number 59: [M.C.], black female, was opposed to the death penalty but reluctantly indicated that she could follow the law though. She was the third strike. The state indicated she vacillated on the death penalty^
“Juror number 38: [K.B.], black male, was convicted' of disorderly conduct and knew a potential witness. A juror list reviewed by a law enforcement officer indicated this individual would be a bad juror. This was the State’s fourth strike.
“Juror number 46: [T.C.],- black female, had 6 convictions and was the state’s sixth strike. During voir dire she questioned the veracity of law enforcement testimony. She knew prosecutors who prosecuted her and her brother.
“Juror number 57: [AC.], black female, had been convicted of theft of property and NWNI [negotiating worthless negotiable instruments]. She was the seventh strike.
“Juror number 60: [L.C.], black female, knew the attorneys and a witness and was the eighth stiike; She was also struck because her religious beliefs im!pacted her ability to sit. in judgment of the accused.
“Juror number 19: [D.B.], black female, had not been paying- attention. She was the State’s eleventh strike. She failed to make eye contact' with the prosecution but was ‘nodding in agreeméñt with the defense.’
“Juror number 58: [I.C.], black female, the State could not remember much about her. She was the State’s sixteenth strike. The State indicated she was struck because she did pot respond to any questions and she did not appear on the State’s list.
“Juror number 51: [R.C.], black- female, was struck because of her age. She was born in-1928.' Actually, she sat on the jury as-an alternate.”
(R 3.[2] 31-32.) The trial court also found that Floyd had struck J.B., a black male.
As to the female: potential jurors, under the J.E.B. claim, the -court found that the jury was composed of six males arid six females. The court further stated that the *992 State presented the following reasons for its strikes:
“[Jjuror number 23: [R.B.] because the prosecutor determined that she was a weak juror and failed to respond to any questions. Juror number 70: [K.D.] was stuck because of age as being close in age to the defendant. Juror number 35: [S.B.] did not respond to any one and was close in age to the defendant. The State struck juror number 5: [T.A.M.] because of age.”
(R 3. 32.)
■ The trial court then determined in its order that the State had presented race- and gender-neutral reasons for its strikes. The court noted that the reasons given by the State concerning the racial-bias challenge had previously been held to be race neutral, “such as: opposition to the death penalty; age; nonresponsiveness to questioning; religious beliefs; prosecutions or conviction of prospective juror or family member; acquaintance with attqrneys involved in the case; bias; lack of mental acuity; inattentiveness to questioning; and demeanor.” (R 3. 33), As part of this third stage of the analysis, the court noted that the burden again was on Floyd to offer evidence that the reasons given by the State had been pretextual'or shams and that the prosecutor had intentionally discriminated. The court also noted that this is a factual determination. As to Floyd’s arguments to rebut the reasons given by the prosecutor, the trial court found that Floyd contended that the prosecutor had failed to meaningfully question the jurors who were struck concerning the stated reasons for the strikes. Floyd also argued that the prosecutor had historically discriminated in his striking of the jury and cited five cases in which convictions were reversed by this Court on the basis of that prosecutor’s discriminatory strikes. Floyd also argued that, although the prosecutor had stated that certain jurors were struck based on their or their family’s criminal backgrounds, the .defense had no means to check this information. Moreover, Floyd argued, some of the jurors were allegedly struck by the prosecutor based on age, but the record showed that their ages varied from 28 to 77 years old. Finally,- Floyd alleged that two white jurors, who were similarly situated'to black jurors who were struck based on traffic tickets and opinions as to the death penalty, were allowed to remain on the jury. As to these two white jurors, the court found no indication of discrimination and distinguished the two white jurors as follows:
“[Jjuror number 54, K.C., a white male, also had a traffic ticket. This Court was aware of Mr. C.’s law and order philosophy — as was the State. The State strike list indicated he would be a good juror. Floyd also questioned the reason the State struck a black female because she vacillated on the death penalty, and yet, failed to strike C.D., juror number 74, a white female who expressed, similar reservations. The State strike list had a ‘no’ beside her name. In fact, Chief Assistant District Attorney Gary Maxwell, who struck the jury, stated that he intended to strike C.D. but was directed by District Attorney Doug Va-leska to keep her on the jury. Again, the Court was familiar with Ms. D. who comes from an old Dothan family with extensive ties to the community. Mr. Valeska knew the family. These were valid reasons expressed by the State for keeping these two individuals on the jury. Floyd argued that these two white jurors were similarly situated as to black jurors struck by the State. The Court does not find that to be the case.”
(R 3. 35-36.)
The court in its order stated that it had improperly focused on Floyd’s “invited error” because he had indicated that he was *993 satisfied with the jury, rather than having addressed the third step of a Batson inquiry. (R 3. 36.) According to the trial court,, it had a “long-standing practice of ordering the State to give its reasons for strikes of African-Americans whenever a Batson motion is made even if a prima fade ease is not made by the defense.”- (R 3. 36.)- (Emphasis in original.) Thus, the court stated that the State was put on standing notice that it would have to provide reasons regardless of a prima facie showing by the defendant, and the court stated that it had considered this when evaluating the state’s reasons- and weighing them against Floyd’s objections.
The trial court ultimately considered the above-stated reasons from the State and arguments from Floyd concerning those reasons and concluded:
“this Court already has held an evi-dentiary hearing in this case. Having again considered the evidence presented at the hearing, the Court determines that the reasons offered by the prosecution for its use of peremptory strikes against African-Americans were race-neutral and its reasons for striking women were gender-neutral. Therefore, it is this Court’s determination that Fioyd has failed to prove that the prosecution purposely discriminated against African-Americans and women during jury selection. Further, the Court finds that the evidence taken at the Batson hearing does not suggest that the prosecution’s facially race and gender-neutral reasons for striking African-American and female jurors were a mere sham or pretext. Floyd has failed to carry his burden of proving purposeful discrimination on the basis of race or gender. The Court hereby denies Floyd’s Batson and' J.E.B. claims.”
(R 3. 36-37.) The trial court thereby found no purposeful discrimination by the State on the basis of .race or gender in striking the jury.
As the court- noted in its order, this Court has previously determined, on direct appeal of this case, that a prima facie case of discrimination was made as to race and, out of an abundance of caution, as to gender. Thus, a presumption of discrimination then existed as to the use of the peremptory challenges. Batson, 476 U.S. at 97, 106 S.Ct. 1712:
The State then provided reasons for its strikes of African-Americans and females; those reasons had to be clear and to relate to the case, but they did not need to rise to the level of a challenge for cause. Ex parte Branch, 526 So.2d 609, 623 (Ala.1987).
“ ‘ “ ‘Within the context of Batson, a “race-neutral” explanation “means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the -prosecutor’s explanation, the reason offered will be deemed race neutral.” Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). “In evaluating the' race-neutrality of an 'attorney’s explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law.” Id. “[E]valuation of the prosecutor’s state of mind based on demeanor and credibility lies ‘peculiarly within the trial judges’s province.’” Hernandez, 500 U.S. at 365, 111 S.Ct. at 1869.’
“ ‘ “Allen v. State, 659 So.2d 135, 147 (Ala.Crim.App.1994).”
“ ‘Martin v. State, 62 So.3d 1050, 1058-59 (Ala.Crim.App.2010).’ ”
*994 Riley v. State, 166 So.3d 705, 722 (Ala.Crim.App.2013), quoting Thompson v. State, 153 So.3d 84, 123 (Ala.Crim.App.2012).
Here, the State presented clear reasons that were facially race- and gender-neutral. The reason that potential jurors were* struck because of criminal activity is race-neutral. . See, Sharp v. State, 151 So.3d. 342, 367 (Ala.Crim.App.2012) (opinion on remand from the Supreme Court on application for rehearing on return to second remand) (“As to Juror no. 11, ’ the State asserted that, ‘through its records,’ it had noted that Juror no. 11 had also been convicted in Madison County of negotiating' a worthless check, .a crime of moral turpitude. This is a valid race-neutral reason.” (Footnote omitted.)) See also Wilson v. State, 142 So.3d 732, 756 (Ala.Crim.App.2012); Welch v. State, 63 So.3d 1275, 1283 (Ala.Crim.App.2010); Thomas v. State, 611 So.2d 416, 418 (Ala.Crim.App.1992). The reason that an African-American juror knew a witness was also race-neutral. Temmis v. State, 665 So.2d 953 (Ala.Crim.App.1994) (noting that the fact that a prospective juror knows a witness is a valid race-neutral reason for removing the juror). The reason given for the strike of an African-American potential juror— because she knew the prosecutors who had prosecuted her brother — has also been held to be race-neutral. Jackson v. State, 169 So.3d 1, 29 (Ala.Crim.App.2013) (“As to Juror 284 who was struck by the prosecutor, the court affirmed that she ‘has a brother who has been prosecuted in this very court and sent to prison by the undersigned. Her brother was prosecuted by this District Attorney’s office.’ (Record on Return- to Remand, 6.) Th[is] reason[ ] [is] race neutral.”). Further;-the prosecutor’s reason for striking an African-American potential juror, that she vacillated on being able to impose the. death penalty, has been held to be race-neutral. Mashburn v. State, 7 So.3d 453, 461 (Ala.Crim.App.2007) (“The prosecutor stated that he struck the challenged veniremembers based on their ambiguous answers to questions regarding the imposition of the death penalty or based on their opposition to the death penalty: ‘ “Although a juror’s reservations about the deathe penalty may not be sufficient for a challenge for cause, his view may constitute a reasonable explanation for the exercise of a peremptory strike.” Johnson v. State, 620 So.2d 679, 696 (Ala.Cr.App.1992), reversed on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993).’ Dallas v. State, 711 So.2d 1101, 1104 (Ala.Crim.App.1997), aff'd, 711 So.2d 1114 (Ala.1998).”). The prosecutor’s reason for striking an African-American juror — because her religious beliefs prevented her from sitting in judgment — was also race-neutral. Smith v. State, 838 So.2d 413 (Ala.Crim.App.2002).
Moreover, the prosecutor gave as reasons the older age of a potential juror and the fact that law enforcement or the prosecutor did not believe that the potential juror would be a good juror.[3] The prosecutor also referred to another African-American juror’s older age[4] and to the ages of two female jurors who were similar in age to Floyd. • These reasons have been *995 held to be facially nondiscriminatory. “Age, place of employment and demeanor of the potential juror have been held to be sufficiently race-neutral reasons for exercising a peremptory challenge,’ Sanders v. State, 628 So.2d 428, 432 (Ala.Crim.App.1993). See Floyd v. State, [Ms. CR-05-0935, September 28, 2007] 190 So.3d 940, 966 (Ala.Crim.App.2007) (finding no improper reason for strike when “prosecutor stated that he struck juror no. 5 because of her age and because his initial impression of her was that she would not make a favorable juror for the State”).
“ ‘Indeed, this sort of situation is precisely why Batson jurisprudence requires reviewing courts to give “great deference” to a trial judge’s determination of no racial motivation in a peremptory strike. See, e.g., United States v. Bernal-Benitez, 594 F.3d 1303, 1312 n. 5 (11th Cir.2010) (recognizing importance of deference because “[t]he judge presiding over jury selection is in a better position than we are to consider the relevant evidence — including the interactions between counsel and the venire during voir dire, counsels’ questions and comments, and the venire persons’ de-meanors”); [United States v.) Cordoba-Mosquera, 212 F.3d [1194] at 1198 [ (11th Cir.2000) ] (“Deference is particularly warranted here, where the proffered race-neutral explanation centered on ... behaviors that are especially given to on-the-spot interpretation.”)
Jackson v. State, 169 So.3d 1, 31 (Ala.Crim.App.2010) (opinion on return to remand), quoting Lee v. Thomas, (No. 10-0587-WS-M, May 30, 2012) note 24 (11th Cir.2012) (not reported in F.Supp.2d).
Finally, the prosecutor stated that nonresponsiveness to his questioning was a reason that he-, struck two females and one African-American. This reason' has also been held to be facially nondiscriminatory. Jackson v. State, 686 So.2d 429, 431 (Ala. Crim.App.1996) (stating that, • despite claims of' gender and racial discrimination in striking the-jury, “[t]he reason for the prosecutor’s striking of Juror No. 209, Juror No. 57 and Juror No. 75, a black male and two white females, i.e., they were non-responsive to- questions by the-prosecutor, has been held to be a race-neutral reason. See Macon v. State, [659 So.2d 221 (Ala.Crim.App.1994)]; Johnson v. State, 648 So.2d 629 (Ala.Cr.App.1994).”).
“ ‘A valid race-neutral reason for striking a juror is because he is inattentive, hostile, or impatient, or is evasive and ambiguous when answering questions. Mitchell v. State, 579 So.2d 45 (Ala.Cr.App.1991), cert. denied, 596 So.2d 954 (Ala.1992).... See Stephens v. State, 580 So.2d 11 (Ala.Cr.App.), affirmed, 580 So.2d 26 (Ala.), cert. denied, 502 U.S. 859, 112 S.Ct. 176, 116 L.Ed.2d 188, rehearing denied, 502 U.S. 1000, 112 S.Ct. 625, 116 L.Ed.2d 647 (199[1]) (holding that strike based on juror’s demeanor was valid race-neutral reason and did not violate Batson).’
“Brown v. State, 623 So.2d [416,] 419 [(Ala.Crim.App.1992)]. See also Nesbitt v. State, 531 So.2d 37, 40 (Ala.Crim.App. 1987) (holding that the fact that a juror ‘áppeared to be inattentive’ was neutral reason).”
Riley v. State, supra at 724.
Thus, the prosecutor presented reasons for his strikes that were facially race- and gender-neutral.
“■‘“Once the prosecutor has,articulated a race-neutral reason for the strike, the moving, party can then offer evidence showing that those reasons are merely a sham- or pretext.” Ex parte Branch, 526 So.2d 609, 624 (Ala.1987). “A determination regarding a moving party’s showing of intent to discriminate under Batson is “‘a-pure issue of fact *996 subject to review under a deferential standard.”’ Armstrong v. State, 710 So.2d 531, 534 (Ala.Crim.App.1997), quoting Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).” Williams v. State, 55 So.3d 366, 371 (Ala.Crim.App.2010). “The trial court is in a better position than the appellate court to distinguish bona fide reasons from sham excuses.” Heard v. State, 584 So.2d 556, 561 (Ala.Crim.App.1991).’ ”
Riley v. State, 166 So.3d at 723, quoting Thompson v. State, 153 So.3d at 124.
“[T]he trial judge must make a sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as he knows them, his knowledge of trial techniques, and his observation of the .manner in which the prosecutor examined the venire and the challenged jurors. People v. Hall, 35 Cal.3d 161, 672 P.2d 864, 858, 197 Cal.Rptr. 71 (1983); see also [People v.] Wheeler, 22 Cal.3d [258] at 281, 583 P.2d [748] at 764, 148 Cal.Rptr. [890] at 906 [(1978) ].
“In evaluating the evidence and explanations presented, the trial judge must determine whether the explanations are sufficient to overcome the presumption of bias. Furthermore, the trial judge must be careful not to confuse a specific reason given by the state’s attorney for his challenge, with a ‘specific bias’ of the juror, which may justify the peremptory challenge:
“‘The latter, a permissible basis for exclusion of a prospective juror, was defined in Wheeler as “a bias relating to the particular case on trial or the parties or witnesses thereto.” Wheeler, 22 Cal.3d at 276, 148 Cal.Rptr., at 902, 583 P.2d at 760. Further, a review of the record demonstrated that the prosecutor had not, in fact, satisfied his burden of showing that he excluded the Spanish surnamed jurors on the grounds of specific bias.’
“Slappy[ v. State], 503 So.2d [350] at 354 [ (Fla.Dist.Ct.App.1987) ]. The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, see Hall, 35 Cal.3d at 168, 672 P.2d at 858-59, 197 Cal.Rptr. at 75; Slappy, 503 So.2d at 356; the judge must consider whether the facially neutral' explanations are contrived to avoid admitting acts of group discrimination.”
Ex parte Branch, 526 So.2d 609, 624 (Ala.1987).
In its order, the trial court considered arguments by Floyd that the State’s reasons were pretextual. Floyd argued that, two. African-American jurors were struck for reasons that were shared by white jurors who were not struck by the prosecutor. The first concerned the prosecutor’s strikes of African-American jurors based on their criminal activity. Floyd argued disparate treatment in comparison to white jurors and referred to a white juror who was not struck, although, like an African-American juror, the juror had been issued traffic tickets.- However, this argument is misplaced, as the trial court found. The African-American juror was not struck for that sole reason but also because of other criminal activity. “ ‘[W]hen more than one reason was given for striking some veniremembers, we need only find one race neutral reason among those asserted to find that the strike was race-neutral; we need not address any accompanying reasons that might be suspect. See Powell v. State, 608 So.2d 411 (Ala.Cr.App.1992); Davis v. State, 555 So.2d 309 (Ala.Cr.App.1989).’ ” Zumbado v. State, 615 So.2d 1223, 1231 (Ala.Crim.App.1993). Moreover, the trial court stated that both the prosecutor and the trial court knew this juror to be a strong advocate of law and order. Giles v. State, 815 *997 So.2d 585, 589, (Ala.Crim.App.2000) (“a prosecutor’s personal knowledge about a veniremember can provide a race-neutral reason for a strike.”).
Floyd also argued that the prosecutor’s reason for striking an African-American juror for vacillating as to her ability to impose the death penalty was also shared by a white juror who was not struck by the prosecutor. However, the trial court .found that the State’s reason was in fact race-neutral because the State’s strike list revealed a “no” written by the white juror; however, she was not struck because the district attorney was familiar with the juror’s family and stated that she should not be struck. Compare Giles v. State, 815 So.2d 585, 589 (Ala.Crim.App.2000) (“[A] prosecutor’s personal knowledge about a veniremember can provide a race neutral reason for a strike. See Weaver v. State, 678 So.2d 260 (Ala.Crim.App.1995), rev’d on other grounds, 678 So.2d 284 (Ala.1996) (prosecutor’s ‘personal knowledge’ that potential juror’s brother had been- prosecuted by district attorney’s office was race-neutral reason for a strike); McLeod v. State, 581 So.2d 1144, 1154-55 (Ala.Crim.App.1990) (on the basis of personal knowledge, prosecutor refuted veniremember’s assertion that he had previously served on a jury that had returned a guilty verdict in a cocaine case and reason for strike was race-neutral.).”).
“ ‘ “ ‘When the defendant challenges as pretextual the prosecutor’s explanations as to a particular venireperson, the inquiry becomes factual in nature and moves to step three. At this step the trial court must resolve the factual dispute, and whether the prosecutor intended to discriminate is a question of fact. Hernandez v. New York, 500 U.S. 352, 364-65, 111 S.Ct. 1859, 1868-69, 114 L.Ed.2d 395 (1991). In the third step, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination. At this stage, the trial court must consider the persuasiveness of the explanations, and it is also at this stage that “implausible or fantastic justifications may (and probably will) be found to be pretext for purposeful discrimination.” Purkett [v. Elem], 514 U.S. [765,] 768, 115 S.Ct. [1769,] 1771 [ (1995).].’”’”
Smith v. State, 838 So.2d 413, 434-35 (Ala.Crim.App.2002), quoting Fletcher v. State, 703 So.2d at 435-36, quoting in turn Bush v. State, 695 So.2d 70, 96 (Ala.Crim.App.1995).
Here, the trial court evaluated the State’s facially race- and gender-neutral reasons in light of Floyd’s arguments that those reasons were pretextual-and that the State , intended to discriminate ■ against those jurors. The trial court found.that the prosecutor’s reasons were not discriminatory,. despite Floyd's claims to the contrary. Thus, Floyd did not meet his burden of proving discrimination by the State.
“ ‘On appeal, á trial court’s ruling on the isáue of discriminatory intent must be sustained unless it is. clearly erroneous. See Hernandez v. New York, 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395, (1991) (plurality opinion); id., at 372, 111 S.Ct. 1859, (O’Connor, J., joined by Scalia, ■ J.,. concurring in judgment). The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation' of the prosecutor’s credibility, see 476 U.S. at 98, n. 21, 106 S.Ct. 1712 and “the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge,” Hernandez, 500 U.S. at 365, 111 S.Ct. 1859 (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke a juror’s demeanor (e.g., nervousness, ’inattention), making the trial court’s first-hand obser *998 vations of even greater importance. In this situation, the trial court must evaluate not only whether, the, prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and deméañor lié “ ‘peculiarly within a trial judge’s' province,’ ” ibid. (quoting Wainwright v. Witt, 469 U.S. 412, 428, 106 S.Ct. 844, 83 L.Ed.2d 841 (1986)), and we have stated that “in the absence of exceptional circumstances, we would defer to [the trial court].” 500 U.S. at 366, 111 S.Ct. 1859.’ ”
Sharp v. State, 151 So.3d at 362, quoting Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).
“‘ “ ‘When reviewing a trial court’s 'ruling on'a Batson motion,’ this court gives deference to the trial court and will reverse a trial ■ court’s decision only if the ruling is clearly erroneous.’ Yancey v. State, 813 So.2d 1, 3 (Ala.Crim.App.2001). ‘A trial court is in a far better position than a reviewing court to rule on issues of credibility.’ Woods v. State, 789 So.2d 896, 915 (Ala.Crim.App.1999). ‘Great confidence is placed in our trial judges in the selection of juriéé. Because they deal on á daily basis with the attorneys in their respective counties, they are better able to' determine whether discriminatory patterns exist in the selection of juries.’ Parker v. State, 571 So.2d 381, 384 (Ala.Crim.App.1990).
“‘“.‘Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Bat-son, the finding will “largely turn on evaluation of credibility” 476 U.S., at 98, n. ‘21. In the typical challenge inquiry, the decisive question will be whether counsel’s race-neutral explanation for a peremptory- challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.’
“ ‘ “Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).”
“ ‘Doster v. State, 72 So.3d 50, 73-74 (Ala.Crim.App.2010).’ ”
Riley v. State, 166 So.3d at 722-23. “ ‘ “ ‘[A] finding ■ is “clearly erroneous” when although there is evidence to support it, the reviéwing court on the entire evi-dencé is left with a definite and firm conviction that a mistake has been committed.-’ ” ’ ” Harris v. State, 2 So.3d 880, 899 (Ala.Crim.App.2007), quoting Fletcher v. State, 703 So.2d 432, 436 (Ala.Crim.App.1997), quoting in turn Davis v. State, 555 So,2d 309, 312 (Ala.Crim.App.1989).
. In light of the deference to be accorded to the trial court and based on the record, including the court’s order on return to second remand, the trial court’s finding that the prosecutor did not purposefully discriminate against African-American and female potential jurors during the striking process was not clearly erroneous. Thus, there was no plain error as to the prosecutor’s striking of the jury and, as all other matters have previously been resolved, the conviction, and sentence áre due to be affirmed.
AFFIRMED. 
WINDOM, P.J., and WELCH and JOINER, JJ., concur.
KELLUM, J., concurs in the result.

. This Court determined that- the gender-based challenge was not as strong or supported as the race-based challenge; however, out of an' abundance of caution, reasons were also required for those strikes.

. R 3 denotes the record filed on.return to secpnd remand.

. This finding by the trial court addresses one of the two potential jurors the Alabama Supreme Court noted as having been struck despite the prosecutor's inability to remember the reason for his strike. This Court stated on return- to remand that the prosecutor' had in fact stated that the juror was struck because "of her age and becaus’e he did not believe that she would make a favorable juror. On return to second remand, the trial court gave these reasons for finding that the State’s striking of this potential juror was not discriminatory.

. ■ This juror served as an alternate.