[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12380

_____

D.C. Docket No. 4:06-cv-04666-SLB


RICKY D. ADKINS,

                                                    Petitioner - Appellant,

                             versus

WARDEN, HOLMAN CF,
COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,

                                                    Respondents - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 27, 2013)

Before TJOFLAT, BARKETT and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

        Petitioner Ricky Adkins, an Alabama prisoner on death row, appeals from

the District Court's denial of his first petition for writ of habeas corpus, brought

pursuant to 28 U.S.C. § 2254.  The District Court granted Mr. Adkins a Certificate

of Appealability (COA) for the following issues: (1) whether the state

unconstitutionally removed black jurors on the basis of their race in violation of

Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986); and (2) whether Mr.

Adkins was denied his constitutional rights to fair proceedings and due process

because of a judicial conflict of interest and the appearance of impropriety.  This

Court granted Mr. Adkins's request to expand the COA to include a third issue:

whether his trial counsel rendered ineffective assistance of counsel during the

penalty phase of his trial.  Because we determine that Mr. Adkins is entitled to

habeas relief based on his Batson claim, we do not decide his other claims.

## I.  Background and Legal Presentation of the Claim

The body of Billie Dean Hamilton, a real estate agent who was Caucasian,

was discovered in St. Clair County, Alabama, on January 18, 1988.  See Adkins v.

State, 600 So. 2d 1054, 1057, 1059, 1060–61 (Ala. Crim. App. 1990) (Adkins I);

Ex parte Adkins, 600 So. 2d 1067, 1069 (Ala. 1992) (Adkins II).  Right away, Mr.

Adkins, also white, was arrested and charged with capital murder for Hamilton's

death.  Id.

Jury selection began on October 24, 1988.  During that process, the state

exercised nine of its twenty-four peremptory strikes to remove nine of eleven black

2

veniremembers.  Adkins II, 600 So. 2d at 1069.  Mr. Adkins struck one of the two

remaining black jurors, and ultimately, only one black juror served on the jury.  Id.

At the time of Mr. Adkins's trial, the rule in Alabama was that a white defendant,

like Mr. Adkins, lacked standing to challenge the state's exercise of peremptory

strikes to remove black jurors from the panel.  See, e.g., Owen v. State, 586 So. 2d

958, 959 (Ala. Crim. App. 1990), rev'd sub. nom. Ex parte Owen, 586 So. 2d 963

(Ala. 1991).  For this reason, there was neither an objection by the defense nor a

proffer of reasons by the prosecutor for striking the nine black jurors.

The jury convicted Mr. Adkins of capital murder and sentenced him to

death.  See Adkins I, 600 So. 2d at 1056.  On August 24, 1990, the Alabama Court

of Criminal Appeals affirmed his convictions and sentence on direct appeal.  Id. at

1067.  Before Mr. Adkins sought review in the Alabama Supreme Court, see

Adkins II, 600 So. 2d 1067, the United States Supreme Court delivered its ruling in

Powers v. Ohio, holding "that a criminal defendant may object to race-based

exclusions of jurors effected through peremptory challenges whether or not the

defendant and the excluded juror share the same races." 499 U.S. 400, 402, 111 S.

Ct. 1364, 1366 (1991).  Following Powers, Mr. Adkins raised a Batson claim in his

petition for writ of certiorari to the Alabama Supreme Court.  Adkins II, 600 So. 2d

at 1069.  The Alabama Supreme Court granted Mr. Adkins's petition and

3

remanded his case to the Alabama Court of Criminal Appeals for further

proceedings.  Id. (citing Ex parte Bankhead, 585 So. 2d 112, 117 (Ala. 1991), aff'd

on remand, 625 So. 2d 1141 (Ala. Crim. App. 1992), rev'd on other grounds, 625

So. 2d 1146 (Ala. 1993)).[1]   The Alabama Court of Criminal Appeals then

remanded Mr. Adkins's case to the trial court for a Batson hearing on June 12,

1992, with the direction, "[d]ue return should be filed with this court within 90

days from the date of this opinion."  Adkins v. State, 600 So. 2d 1072, 1073 (Ala.

Crim. App. 1992) (Adkins III).  The return was thus due on September 10, 1992.

The state trial court held the Batson hearing on July 29, 1992.  During that

hearing, the prosecutor proffered reasons for striking each of the nine black jurors,

which the Alabama Court of Criminal Appeals summarized as follows:

> **Prospective juror number 59** . . . was struck because he came forward and asked that he be excused from serving on the jury.  He was 61 years old and had ulcers.
>
> **Prospective juror number 39 [Billy Morris]** . . . was struck because he answered during the voir dire that he knew about the case and because he was also single.

---

[1]  In Ex parte Bankhead, the prosecutor peremptorily challenged eight of ten black jurors on the venire in a capital case with a white defendant.  585 So. 2d at 115, 117.  Two blacks served on the jury.  Id. at 117.  After Powers was decided, the Alabama Supreme Court remanded Bankhead's case for a Batson hearing even though no objection was made at trial.  Id.  ("Based on Powers, we must now hold that Bankhead, a white, has standing under the Equal Protection Clause to challenge the prosecutor's allegedly racially motivated use of peremptory challenges.").

**Prospective juror number 8** . . . was struck because she stated that she knew about the case. The prosecutor also had information that she was married to or lived with an individual he had prosecuted.

**Prospective juror number 52** . . . was struck because of his age and because he was <u>single</u>. He also appeared inattentive and seemed disinterested during voir dire.

**Prospective juror number 36** . . . was struck because she was 53 and <u>single</u>. She was also unemployed and asked to be excused from serving on the jury because she had high blood pressure.

**Prospective juror number 31** . . . was struck because she was <u>single</u> and because she was known to associate with a former local chief of police who had been forced to resign.

**Prospective juror number 56** . . . was struck because he was 86 years old and because he indicated that he knew defense counsel.

**Prospective juror number 14** . . . was struck because she was <u>single</u> and because she worked for the Department of Human Resources (DHR) and the district attorney's office had frequent dealings with her in her capacity as a DHR employee.

**Prospective Juror number 60** . . . was struck because her father had a federal conviction for a drug-related crime.

<u>Adkins v. State</u>, 639 So. 2d 515, 517 (Ala. Crim. App. 1993) (Adkins <u>IV</u>), <u>withdrawn</u>, <u>Ex parte Adkins</u>, 662 So. 2d 925 (Ala. 1994) (unpublished table decision).[2] Also during the <u>Batson</u> hearing, the prosecutor's notes from the voir dire were admitted into evidence as exhibits.

---

[2] Because our discussion of the <u>Batson</u> issue centers on juror Billy Morris, we identify him by name.

5

On September 9, 1992, several weeks after the <u>Batson</u> hearing, the state trial court issued an order directing the prosecutor to supplement the <u>Batson</u> record by affidavit with an "explanation, if any, as to the District Attorney's contention that Billy Morris was a single man."   The trial court's order noted that during voir dire Mr. Morris said he was married.  In an affidavit submitted by the prosecutor dated the same day, the prosecutor stated:

> Mike Campbell and myself were at all times under the impression and understood that Mr. Billy Morris was a single male and he was struck by the state for that reason.  We did not learn until long after the trial and upon reading the transcript that Billy Morris was in fact married and his spouse unemployed.   The notes which we prepared in preparation for the <u>Batson</u> [h]earing also reflected that Billy Morris was single and no where [sic] in our notes taken during this jury selection process is it noted that Billy Morris was a married man.

The next day, without argument or opportunity for cross-examination by Mr. Adkins about the prosecutor's affidavit, the state trial court entered its order finding "that there was no purposeful racial discrimination in the peremptory strikes exercised by the State as to Billy Morris, or any other black juror struck." The trial court's order expressly relied upon the testimony at the <u>Batson</u> hearing and the affidavit submitted by the prosecutor.  With respect to Mr. Morris, the state trial court found that he was struck because of the "mistaken" belief that he was single.  Invoking the trial court's own personal experience with the prosecutor in

6

other cases,[3] the trial court found the prosecutor's assertion of mistaken belief as to

Mr. Morris's marital status "to be credible."  Upon the return from remand after

the Batson hearing, the Alabama appellate courts again affirmed Mr. Adkins's

convictions and death sentence.  See Adkins IV, 639 So. 2d 515;[4] Ex parte Adkins,

639 So. 2d 522 (Ala. 1994) (Adkins V).  The United States Supreme Court denied

certiorari.  Adkins v. Alabama, 513 U.S. 851, 115 S. Ct. 151 (1994).

Mr. Adkins timely sought postconviction relief in the state court pursuant to

Rule 32 of the Alabama Rules of Criminal Procedure.  His Rule 32 petition was

denied by the state trial court, and the Alabama Court of Criminal Appeals

affirmed.  Adkins v. State, 930 So. 2d 524, 550 (Ala. Crim. App. 2001) (Adkins

VI).  The Alabama Supreme Court denied discretionary review, and the Supreme

---

[3]  In support of its finding that the prosecutor was credible, the state trial court's order stated:

> This Court having worked with District Attorney Davis on many other cases in the past, finds that he has never intentionally misrepresented any fact to this Court to gain an advantage in a criminal proceeding.  He has many times admitted facts which were to the detriment of his cases and accepted the consequences of facts that were against his case.  This Court has never found District Attorney Davis to purposefully exclude blacks from juries in cases prosecuted by him.  The Court finds his statement as to mistaken belief as to the marital status of jury [sic] Morris to be credible.

[4]  Judge Bowen dissented from the Alabama Court of Criminal Appeals opinion affirming  the trial court's Batson decision.  See Adkins IV, 629 So. 2d at 520–22 (Bowen, J., dissenting). According to Judge Bowen, "[i]t is obvious here that the district attorney engaged in disparate treatment of black veniremembers struck as opposed to white veniremembers possessing the same characteristics."  Id. at 520.  Judge Bowen dissented also because he believed "the trial court's finding of non-discrimination was clearly erroneous."  Id. at 522.

Court denied certiorari.  Adkins v. Alabama, 547 U.S. 1132, 126 S. Ct. 2022 (2006).

Mr. Adkins then timely filed the petition for writ of habeas corpus now before us, pursuant to 28 U.S.C. § 2254, in the District Court for the Northern District of Alabama on November 14, 2006.  His petition asserted, among other claims, that the state unconstitutionally exercised its peremptory challenges by striking African-American jurors on the bases of their race in violation of Batson.  In respondent's brief in the District Court, the state admitted that "[t]he merits of [Mr. Adkins's Batson] claim were reviewed and rejected by the Alabama Court of Criminal Appeals and the Alabama Supreme Court," but asserted that the state courts' denial of relief on this claim was entitled to deference under AEDPA.  Ultimately, the District Court denied Mr. Adkins's Batson claim on the merits.  Mr. Adkins filed a timely notice of appeal and as we recited above, the District Court granted him a COA on his Batson claim.

After oral argument before this Court, and long since the parties had submitted their briefs, we requested further briefing by the parties on the Batson issue.  In that briefing, the state raised an argument for the first time that, because Mr. Adkins did not contemporaneously object to the prosecutor's peremptory strikes at the time of trial, he cannot raise a Batson claim in his federal habeas petition.  The state did not raise this argument in the District Court or in its original

response brief filed in this Court.  For this reason, we conclude that it has waived this argument.  See United States v. Ardley, 242 F.3d 989, 990 (11th Cir. 2001) (stating it is a "well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned"); United States v. Nealy, 232 F.3d 825, 830 (11th Cir. 2000) ("Parties must submit all issues on appeal in their initial briefs."); id. (holding that "parties cannot properly raise new issues at supplemental briefing, even if the [new] issues arise based on the intervening decisions or new developments cited in the supplemental authority").

Although the dissent seems to suggest that Ardley is trumped by the policies implemented by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), our court has applied Ardley and Nealy to a number of cases, including § 2254 cases.  See, e.g., Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1344 n.4 (11th Cir. 2005) (applying Nealy to § 2254 habeas case); Bond v. Moore, 309 F.3d 770, 774 n.5 (11th Cir. 2002) (applying Ardley to § 2254 habeas case); Isaacs v. Head, 300 F.3d 1232, 1253 n.6 (11th Cir. 2002) (same).

But even if we accept the dissent's premise, and assume that the state had not waived its arguments based upon Mr. Adkins's failure to contemporaneously object to the prosecutor's discriminatory exercise of peremptory challenges at the time of trial, we would conclude that his federal claim is properly and squarely

9

before us based on the state court record.   Alabama law foreclosed Mr. Adkins, a white defendant, from bringing a <u>Batson</u> challenge at the time of his trial based on the state's peremptorily striking black jurors.  <u>See, e.g.</u>, <u>Owen</u>, 586 So. 2d at 959.  Indeed, there can be no doubt that <u>Powers</u> was "clearly established federal law" within the meaning of 28 U.S.C. § 2254(d) at the time Mr. Adkins's case was pending on direct appeal before the Alabama Courts.  <u>See</u> <u>Greene v. Fisher</u>, ___ U.S. ___, ___, 132 S. Ct. 38, 45 (2011) (holding that "clearly established Federal law," as determined by the Supreme Court for the purposes of § 2254(d), includes Supreme Court decisions in existence at the time of the state-court adjudication on the merits).

Neither can there be any doubt that state courts are free to fashion and enforce their own procedural rules to require that defendants make contemporaneous objections to preserve constitutional claims.  <u>See, e.g.</u>, <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86–87, 97 S. Ct. 2497, 2506 (1977) (applying procedural bar to habeas petitioner's constitutional claim because he did not contemporaneously object during the trial and, under state law, this failure barred state courts from hearing the claim on either direct appeal or state collateral review).  "The appropriateness in general of looking to local rules for the law governing the <u>timeliness</u> of a constitutional claim is, of course, clear."  <u>Ford v.</u>

Georgia, 498 U.S. 411, 423, 111 S. Ct. 850, 857 (1991) (emphasis added).  Ford

confirms that Batson claims are no exception to the general rule:

> In Batson itself, for example, we imposed no new procedural rules
> and declined either "to formulate particular procedures to be followed
> upon a defendant's timely objection to a prosecutor's challenges," or
> to decide when an objection must be made to be timely.  Instead, we
> recognized that local practices would indicate the proper deadlines in
> the contexts of the various procedures used to try criminal cases, and
> we left it to the trial courts, with their wide "variety of jury selection
> practices," to implement Batson in the first instance.  Undoubtedly,
> then, a state court may adopt a general rule that a Batson claim is
> untimely if it is raised for the first time on appeal, or after the jury is
> sworn, or before its members are selected.

Id. (citations omitted).  Thus, the Supreme Court in Ford viewed state court rules

governing the timeliness of Batson claims to be procedural rules that "limit all

review of the constitutional claim itself," so long as these rules are independent,

adequate and firmly established.  Ford does not call for us to treat the state rules as

a prerequisite to, or element of, the constitutional claim.  Id. at 423–24, 111 S. Ct.

at 857–88.  We do nothing new here.  We have previously viewed a petitioner's

failure to comply with a state's contemporaneous objection rule to preserve a

Batson claim as a procedural impediment, subject to traditional procedural default

analysis, rather than as a defect in the constitutional claim.  See, e.g., Pitts v. Cook,

923 F.2d 1568, 1571 (11th Cir. 1991) (finding petitioner procedurally defaulted

Batson claim where he did not contemporaneously object at trial or on appeal as

Alabama law required and could not show exception to procedural default rule);

see also Tarver v. Hopper, 169 F.3d 710, 712–13 (11th Cir. 1999) (finding petitioner procedurally defaulted his Batson claim because he failed to contemporaneously object at trial where state court determined, under state rule, that claim was procedurally defaulted); id. at 713 (stating, "Alabama can pick its own procedural rules and has done so here"); Cochran v. Herring, 43 F.3d 1404, 1409–10 (11th Cir. 1995) (concluding District Court properly addressed merits of Batson claim after finding that state courts "ha[d] not consistently applied a procedural bar" to cases like the petitioner's).

We certainly recognize that contemporaneous objection rules can serve important state interests, such as finality as well as giving a state trial judge the opportunity to immediately address, and if necessary correct, a constitutional injury.[5] For these reasons, as well as important interests of comity and federalism,

---

[5] We are certainly aware that a contemporaneous objection would, in many cases, allow the trial court to evaluate evanescent evidence relevant to Batson's third step, like the demeanor of the attorney exercising the peremptory challenge and the reasons offered by the attorneys relating to the demeanor of the jurors. See Snyder v. Louisiana, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208 (2008). But the passage of time by itself, where there is no procedural default, does not bar the presentation of a Batson challenge or evidentiary proceedings after the trial in support of the claim. See, e.g., Miller-El v. Cockrell, 537 U.S. 322, 328–29, 123 S. Ct. 1029, 1035 (2003) (Miller-El I) (noting that petitioner's Batson claim relied on pattern and practice evidence presented pretrial before Batson was decided, and, after his case was remanded by the Texas Court of Criminal Appeals for new findings based on Batson); Batson, 476 U.S. at 100, 106 S. Ct. at 1725 (remanding case to the trial court for proceedings to determine prosecutor's explanation, unstated at trial, for his removal of all black persons on the venire and whether facts establish purposeful discrimination); Madison v. Comm'r, Ala. Dep't of Corr., 677 F.3d 1333, 1339 (11th Cir. 2012) (remanding petitioner's case to the District Court for further proceedings "to complete the final two steps of the Batson proceedings").

the procedural default doctrine does not permit federal habeas review of a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment," and a defendant cannot show cause and prejudice, or a miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 729, 750, 111 S. Ct. 2546, 2553, 2565 (1991).

But this is not one of those cases. No Alabama court has ever decided that Mr. Adkins's failure to object precluded it from considering the merits of his Batson challenge. Indeed, the record unambiguously shows just the opposite to be true. After Powers was decided, Mr. Adkins raised his Batson claim for the first time in his petition for writ of certiorari to the Alabama Supreme Court. The Alabama Supreme granted that petition for a writ of certiorari, according to its own procedural rules, and remanded the case to the trial court for a hearing on whether the prosecution exercised its peremptory challenges in a racially discriminatory manner in violation of Batson. This, notwithstanding Mr. Atkins's failure to object at trial. Adkins II, 600 So. 2d at 1069, 1071. Following from that remand, the state courts considered and adjudicated Mr. Adkins's Batson claim on the merits. Under 28 U.S.C. § 2254(d), as amended by AEDPA, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary." Harrington v.
Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 784–85 (2011); accord Childers v.
Floyd, 642 F.3d 953, 967–70 (11th Cir. 2011) (en banc) (holding "an 'adjudication
on the merits' [within the meaning of § 2254(d)] is best defined as any state court
decision that does not rest solely on a state procedural bar"); see also Harris v.
Reed, 489 U.S. 255, 264–65, 109 S. Ct. 1038, 1044–45 (1989) (presuming a merits
determination when it is unclear whether a decision appearing to rest on federal
grounds was decided on another basis). Applying these principles, there is simply
no indication in any of the state courts' opinions which cause us to conclude that
the Alabama courts adjudicated Mr. Adkins's federal claim on anything but the
merits. The dissent may question the wisdom of whether the Alabama Supreme
Court should have excused Mr. Adkins's lack of a contemporaneous objection
based on Alabama's own court rules, but the Alabama Court is entitled to
implement its own wisdom on this. It is not for us to dictate to the state courts of
Alabama which procedural rules it should adopt. Mr. Adkins's Batson claim is
properly before this Court.

## II. Standard of Review

Our review of Mr. Adkins's federal habeas petition is governed by 28 U.S.C.
§ 2254, as amended by AEDPA. Because Mr. Adkins's claim was adjudicated on
the merits in his state court proceedings, § 2254(d) precludes habeas relief unless

the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). See also Harrington, 131 S. Ct. at 785.

Further, "[f]ederal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." Jones v. Walker, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en banc); see also 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."). However,

> when a state court's adjudication of a habeas claim result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.

Jones, 540 F.3d at 1288 n.5 (quotation marks and citations omitted); see also Panetti v. Quarterman, 551 U.S. 930, 953, 127 S. Ct. 2842, 2858 (2007) ("When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied.").

If we determine that AEDPA deference does not apply, we must undertake a de novo review of the claim. McGahee v. Ala. Dep't of Corr., 560 F.3d 1252, 1266 (11th Cir. 2009).

## III. Discussion

It is clearly established federal law that, under the Equal Protection Clause, a criminal defendant has a constitutional "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson, 476 U.S. at 85–86, 106 S. Ct. at 1717. In Batson, the Supreme Court established a three-step inquiry to evaluate a prosecutor's use of peremptory strikes. Id. at 96–98, 106 S. Ct. at 1723–24. The Court summarized Batson's inquiry in Miller-El I:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

537 U.S. at 328–29, 123 S. Ct. at 1035 (citations omitted).

Here, we focus on Batson's third step because the parties do not dispute that Mr. Adkins established a prima facie case of purposeful discrimination or that the state proffered race-neutral reasons for striking nine black jurors. Mr. Adkins's case was remanded by the Alabama Supreme Court for a Batson hearing, the state proffered race-neutral reasons for its peremptory strikes, and the trial court ruled on the ultimate question of discriminatory purpose. On the return from remand, the Alabama Court of Criminal Appeals determined that the trial court found "that a prima facie showing of discrimination had been made," Adkins IV, 639 So. 2d at 517, and that the prosecutor offered race-neutral reasons for its peremptory strikes

16

of black jurors.  Id.  at 517–520.  This satisfied Batson's first and second steps.

Thus, we look to the state court's application of Batson's third step.

We also focus our analysis, at least for § 2254(d)(1) purposes, on the

Alabama Court of Criminal Appeals decision on return from remand in Adkins IV,

639 So. 2d 515 (affirming determination that there was no Batson violation),

because it is the last reasoned state court decision discussing Mr. Adkins's Batson

claim.[6]

Before discussing that opinion, however, several important points about

Batson's third step bear emphasis.  First, it is a defendant's burden to prove

purposeful discrimination at Batson's third step.  See Hernandez v. New York, 500

U.S. 352, 359, 111 S. Ct. 1859, 1866 (1991); Batson, 476 U.S. at 98, 106 S. Ct. at

1724.

Second, the Supreme Court in Batson emphasized that "[i]n deciding

whether the defendant has made the requisite showing [of purposeful

discrimination], the trial court should consider all relevant circumstances."  Batson,

476 U.S. at 96, 106 S. Ct. at 1723 (emphasis added).  The reason for this is,

without it, a court cannot meaningfully evaluate the state's proffered reason.  See

McGahee, 560 F.3d at 1261 ("Because courts must weigh the defendant's evidence

---

[6]  The Alabama Supreme Court summarily affirmed Mr. Adkins's appeal on the return from remand of his Batson hearing in Adkins V, 639 So. 2d 522.  Thus, we "look through" to the Alabama Court of Criminal Appeals decision for the purpose of our analysis under § 2254(d)(1). See McGahee, 560 F.3d at 1261 n.12.

against the prosecutor's articulation of a 'neutral explanation,' courts are directed by Batson to consider 'all relevant circumstances' in the third step of the Batson analysis.").  As the Supreme Court has said, a facially neutral reason, on its own, does not suffice to answer a Batson challenge.  See Miller-El v. Dretke, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325 (2005) (Miller-El II) ("If any facially neutral reason sufficed to answer a Batson challenge, then Batson would not amount to much more than Swain[v. Alabama, 380 U.S. 202, 85 S. Ct. 824 (1965), overruled by Batson, 476 U.S. at 100 n.25, 106 S. Ct. at 1725 n.25].").  It is thus abundantly clear that this principle is clearly established federal law.  Under Batson, "a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."  Batson, 476 U.S. at 93, 106 S. Ct. at 1721 (quotation marks omitted).

With this being the state of the law, this Court has held a state court's failure to consider "all relevant circumstances" at Batson's third step is an unreasonable application of Batson under § 2254(d)(1).  See McGahee, 560 F.3d at 1261–62.[7]

---

[7]  As this Court has observed:

The Supreme Court has repeated this point in later opinions applying Batson. Snyder v. Louisiana, [552 U.S. at 478], 128 S. Ct. [at] 1208 ("[I]n considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be consulted."); Miller El [II], 545 U.S. at 251–52, 125 S. Ct. at 2331–32 ("[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it."); Hernandez v. New York, 500 U.S. 352, 363, 111 S. Ct. 1859, 1868 (1991) ("An invidious discriminatory purpose may often be

Third, we are mindful that a finding of no intentional discrimination is a finding of fact that is ordinarily entitled to great deference. See Batson, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21. A federal habeas court must "presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" Miller-El II, 545 U.S. at 240, 125 S. Ct at 2325 (quoting 28 U.S.C. § 2254(e)(1)). But with respect to a Batson claim in particular, the Supreme Court has stated:

> Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence. [A Batson claim] . . . can be supported by any evidence demonstrating that, despite the neutral explanation of the prosecution, the peremptory strikes in the final analysis were race based. It goes without saying that this includes the facts and circumstances that were adduced in support of the prima facie case.

Miller-El I, 537 U.S. at 340, 123 S. Ct. at 1041.

### A. The State Court's Application of Batson and Determination of the Facts

Our review of the state court record leads us to conclude that the Alabama Court of Criminal Appeals unreasonably applied Batson's third step when it failed

inferred from the totality of the relevant facts.") (quoting Washington v. Davis, 426 U.S. 229, 242, 96 S. Ct. 2040, 2048–49 (1976)).

McGahee, 560 F.3d at 1262 n.13.

to consider all relevant circumstances bearing on whether Mr. Adkins established purposeful discrimination. "Because courts must weigh the defendant's evidence [of purposeful discrimination] against the prosecutor's articulation of a 'neutral explanation,' courts are directed by Batson to consider 'all relevant circumstances' in the third step of the Batson analysis." McGahee, 560 F.3d at 1261. Failure to do so is an unreasonable application of Batson within the meaning of § 2254(d)(1). See id. at 1261–62.

In Adkins IV, after reciting the procedural history of the case, the Alabama Court of Criminal Appeals implicitly turned to Batson's first step and stated:

> The trial court's findings show that the state struck 9 of the 11 black prospective jurors on the venire. One black ultimately sat on the jury. The court found that a prima facie showing of discrimination had been made and it held a hearing at which the prosecutor gave the following reasons . . . .

639 So. 2d at 517. The court then summarized the prosecutor's reasons and found at least one valid, race-neutral reason, to support each of the strikes. Id. at 517–20. Thus, the state court implicitly completed Batson's second step. From there, however, the Alabama Court of Criminal Appeals' entire discussion of the state's decision to strike Mr. Morris was limited to two sentences. The court stated it "will not reverse a trial court's decision on a Batson violation unless that decision is 'clearly erroneous,'" and then summarily concluded that "[w]e do not find the trial court's decision here clearly erroneous." Id. at 520. There is no indication

20

from its opinion that the Alabama Court of Criminal Appeals considered any of the relevant circumstances bearing on the ultimate issue of discriminatory purpose beyond the fact that the prosecutor had proffered race-neutral reasons for its strikes. Because the Alabama Court did not even mention all the relevant circumstances brought to its attention by Mr. Adkins in his brief—circumstances that are supported by the record—we cannot say that it undertook "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Batson, 476 U.S. at 93, 106 S. Ct. at 1721 (quotation marks omitted); see also McGahee, 560 F.3d at 1261–62 (holding that the Alabama Court of Criminal Appeals unreasonably applied federal law that was clearly established in Batson when it failed to consider all relevant circumstances at Batson's third step).

Even giving the Alabama Court of Criminal Appeals the deference it is certainly due, we are left to conclude that it did not perform its duty under Batson's third step by considering the relevant circumstances raised by Mr. Adkins in his brief on return to remand to that court. These relevant circumstances include: (1) the strength of Mr. Adkins's prima facie case; (2) the fact that the prosecution explicitly noted the race of every black veniremember (and only black veniremembers) on the jury list the state relied on in jury selection; (3) the fact that specific proffered reasons provided by the prosecutor were incorrect and/or contradicted by the record; (4) the fact that the trial court relied upon, and did not

subject to adversarial testing, an affidavit from the prosecutor that was submitted after the Batson hearing; and (5) the fact that the trial court relied upon facts not part of the record, such as the trial court's personal experience with the prosecutor in unrelated matters.

We will elaborate, first with regard to the strength of Mr. Adkins's prima facie case. During the voir dire in Mr. Adkins's case, the state used peremptory strikes to exclude nine of eleven eligible black jurors, resulting in a strike rate of eighty-two percent. Such a "seriously disproportionate exclusion" of blacks establishes a strong prima facie case. See Batson, 476 U.S. at 93, 106 S. Ct. at 1721 (quotation marks omitted). The Alabama Court of Appeals gave no consideration or weight to this almost complete elimination of black jurors.

Second, the Alabama Court of Criminal Appeals failed to consider the fact that the prosecution explicitly noted the race of every black veniremember, and only black veniremembers, on the jury list the prosecutor relied upon in striking the jury, marking each of them with a "BM" or "BF." This is strong evidence of discriminatory intent. See Miller-El I, 537 U.S. at 347, 123 S. Ct. at 1045 ("The supposition that race was a factor could be reinforced by the fact that the prosecutors marked the race of each prospective juror on their juror cards.").[8]

---

[8] Although we cite Miller-El I to support our conclusion, we need not rely on Miller-El I to draw the inference that racial notations created by the prosecution on jury strike sheets are relevant circumstances indicative of racial bias. Our conclusion is compelled by the facts.

Third, the Alabama Court of Criminal Appeals did not consider the fact that specific proffered reasons provided by the prosecutor were contradicted by the record.  During the Batson hearing, the prosecutor said he struck Billy Morris because Mr. Morris was single and had prior knowledge of the case.  But the voir dire transcript clearly shows that Mr. Morris said he was married.  The other reason given for striking Mr. Morris, that he had prior knowledge of the case, is hardly persuasive on the facts of this case.  All but five or six of the sixty-four jurors on the venire knew about the case, including at least seven of the white jurors who served on the jury.  These contradictions in the record are relevant because, "when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives."  Miller-El II, 545 U.S. at 252, 125 S. Ct. 2332.

Fourth, the Alabama Court of Criminal Appeals ignored the fact that the trial court relied on evidence that was not tested by the adversarial process of cross-examination.  Upon realizing after the Batson hearing that the prosecution's reason for striking Mr. Morris was not supported by the record (i.e., that he was not single), the trial court solicited and relied upon an ex parte affidavit from the prosecutor without giving Mr. Adkins an adequate notice or opportunity to be

heard.[9]  As we noted, the trial court on remand conducted the Batson hearing on July 29, 1992, at which time both parties presented evidence.  On September 9, 1992, the trial court entered an order soliciting an explanation from the prosecutor for why Mr. Morris was struck for being single when the voir dire transcript indicated he was married.  The order was apparently served on the prosecutor on September 9, 1992, but not on counsel for Mr. Adkins.  The prosecutor responded to the Court's order by preparing an affidavit dated that same day.  In the affidavit, the prosecution claimed that it struck Mr. Morris under the mistaken belief that he was single.  The next day, September 10, 1992—the day the record and trial court's order were due to be returned to the Alabama Court of Criminal Appeals— the trial court entered its order relying upon the prosecutor's affidavit in denying Mr. Adkins's Batson claim.

Six days later, Mr. Adkins's counsel objected to consideration of the ex parte affidavit and moved for the ex parte affidavit to be included in the record on appeal.  Specifically, Mr. Adkins's motion stated he "was provided no notice, no opportunity to contest the reliability of the information solicited or relied upon through cross-examination or other means, and no opportunity to be heard."

---

[9]  By ex parte, we mean the trial court solicited and considered evidence from one party only, without adequate notice or argument from Mr. Adkins.  Mr. Adkins's counsel represented to the Alabama Court of Criminal Appeals that he received both the final order and the solicitation order "several days later" and the affidavit "was never served on defense counsel." The state does not dispute these facts.

Generally, Mr. Adkins argued the trial court's solicitation and consideration of the affidavit deprived him due process.

Although Mr. Adkins's brief on return to remand to the Alabama Court of Criminal Appeals brought these crucial facts to the court's attention the court did not mention or consider them. See Adkins IV, 639 So. 2d at 517–520. The timing of the prosecutor's ex parte affidavit is relevant because it was offered only after the trial court brought contradictions in the record to the prosecutor's attention. As such, it is "difficult to credit" and "reeks of afterthought." Miller-El II, 545 U.S. at 246, 125 S. Ct. at 2328. Similarly, the state's submission of the affidavit to the trial court on the eve of the trial court's Batson ruling, without service to Mr. Adkins's counsel, is relevant because it assured the affidavit would not be subjected to cross-examination or other adversarial testing.[10] Further, the Alabama Court of Criminal Appeals did not consider that the trial court relied not only on the ex parte affidavit, but also on non-record evidence which Mr. Adkins did not have an opportunity to rebut, such as the trial court's personal experience with and opinion about the reputation of the prosecutor.[11] These are relevant circumstances

---

[10] In other contexts, the Supreme Court has observed that "[t]he opportunity for cross-examination . . . is critical for ensuring the integrity of the fact-finding process. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Kentucky v. Stincer, 482 U.S. 730, 736, 107 S. Ct. 2658, 2662 (1987) (quotation marks omitted).

[11] The trial court based its finding of no purposeful discrimination in part on its own opinion of the prosecutor's reputation. However, there was no evidence presented during the Batson

that should have been considered by the Alabama Court of Criminal Appeals at Batson's third step. Instead, the Alabama Court of Criminal Appeals never mentioned them.

We also conclude the state trial court's failure to consider all relevant circumstances in making its fact finding of no purposeful discrimination, as well as its consideration of an ex parte affidavit, is "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Batson clearly established that the Alabama Court of Criminal Appeals was required to consider all relevant circumstances in making its ultimate factual determination. Because the court overlooked material facts in its factfinding, it not only unreasonably applied Batson, it also unreasonably determined the facts at Batson's critical third step.

In sum, we conclude the Alabama Court of Criminal Appeals unreasonably applied Batson because it failed to consider crucial facts which Mr. Adkins raised in his brief to that court relevant to Batson's third step. See McGahee, 560 F.3d at 1263 ("Because the court omitted from step three of its analysis crucial facts which McGahee raised in his brief to that court, we find that the Court of Criminal Appeals did not review 'all relevant circumstances' as required by Batson."

---

hearing about the prosecutor's reputation, other than assertions of good faith by the prosecutor. Neither was there evidence of the prosecutor's use of peremptory strikes against blacks in other criminal proceedings. It was therefore not reasonable for the trial court to interject non-record facts into its Batson analysis. Importantly, as with the prosecutor's affidavit itself, Mr. Adkins did not have notice or an opportunity to be heard on these matters.

(quoting Batson, 476 U.S. at 96, 106 S. Ct. at 1723)).  For these reasons, we also conclude the state trial court unreasonably determined the facts based upon the state court record.

### B.  De Novo Review of Batson Claim

Where, as here, "we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254's deference and must undertake a de novo review of the record."  McGahee, 560 F.3d at 1266.  Our review of the record leads us to conclude that Mr. Adkins has met his burden at Batson's third step and shown purposeful discrimination as to Mr. Morris.  See id. at 1267–68.  We emphasize that our conclusion is not based upon any one particular fact, but the totality of relevant circumstances in this case.  See Miller-El II, 545 U.S. at 251–52, 125 S. Ct. at 2331 ("[T]he rule in Batson provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it.").

For example, we stress the strength of Mr. Adkins's prima facie case for discrimination.  Batson recognized that "a 'pattern' of strikes against black jurors . . . might give rise to an inference of discrimination."  Batson, 476 U.S. at 97, 106 S. Ct. at 1723.  Again, the state here used peremptory strikes to exclude nine of eleven potential black jurors, resulting in a strike rate of eighty-two percent.  Only

one black juror served on Mr. Adkins's petit jury.  The Supreme Court has observed that "total or seriously disproportionate exclusion of Negroes from jury venires is itself such an unequal application of the law . . . as to show intentional discrimination."  See Batson, 476 U.S. at 93, 106 S. Ct. at 1721 (quotation marks and citations omitted).  Also here, like in Miller-El II, "[h]appenstance is unlikely to produce this disparity." 545 U.S. at 241, 125 S. Ct. at 2325 (quotation marks omitted); see also id. at 240, 125 S. Ct. at 2325 (describing the prosecutor's use of peremptories as "remarkable" where one black juror served on the jury, but the prosecutor peremptorily struck ten of eleven eligible black jurors).  We conclude the removal of so many eligible black jurors in Mr. Adkins's case is difficult to explain on nonracial grounds.  But our conclusion is not based upon statistics alone.

The record of the voir dire and the Batson hearing also support the conclusion that Billy Morris was not excused for any legitimate reason.  The state said that it struck Mr. Morris because he was single and had prior knowledge about the case.  But in fact, Mr. Morris told the state during voir dire that he was married.  What's more, almost all of the jurors on the venire had prior knowledge about the case, including the majority of white jurors who sat on the jury.  See id. at 241, 125 S. Ct. at 2325 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that

28

is evidence tending to prove purposeful discrimination to be considered at Batson's third step."). The absence of a legitimate reason indicates Mr. Morris was removed because of his race. See, e.g., McGahee, 560 F.3d at 1267 (reason found pretextual where there was no evidence in the record to support it).[12]

It is also worth noting that our conclusion that the state struck Mr. Morris for racial reasons is buttressed as well by the fact that the prosecution explicitly noted the race of every black veniremember (and only black veniremembers) on its jury list in preparation for voir dire, and the fact that the prosecutor acknowledged at the Batson hearing that he "was not concerned with the Batson matter [during voir dire] because it [w]as a white-on-white [crime]." This statement from the prosecutor is an explicit acknowledgment that because Mr. Adkins's trial occurred before the Supreme Court's decision in Powers, 499 U.S. 400, 111 S. Ct. 1364, the prosecutor was not constrained by Batson in exercising his peremptory challenge against black jurors. See, e.g., Bui v. Haley, 321 F.3d 1304, 1314–16 (11th Cir. 2003) (finding, in a similar post-Powers remand context, that the prosecutor's

---

[12] The removal of even one juror for discriminatory reasons is sufficient to violate Batson. As this Court has previously stated, "under Batson, the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown." United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986); see also Snyder, 552 U.S. at 478, 128 S. Ct. at 1208 ("Because we find that the trial court committed clear error in overruling petitioner's Batson objection with respect to [one juror], we have no need to consider petitioner's claim regarding [a second juror]."); Parker v. Allen, 565 F.3d 1258, 1270 (11th Cir. 2009) ("It is not necessary to show that all or even a majority of the prosecutor's strikes were discriminatory; any single strike demonstrated to result from purposeful discrimination is sufficient.").

belief at the time of voir dire that Batson did not apply to the defendant's case because the defendant was not black, was relevant to the prosecutor's state of mind and indicated the prosecutor believed he could strike black jurors for any reason, including race).[13]

Our conclusion that the prosecutor exercised his peremptory strikes based on race is also bolstered by the fact that Mr. Morris was not the only black juror for whom the state offered reasons that were not supported by the record or were otherwise suspect because they applied to white jurors who were not excused. See, e.g., Adkins IV, 639 So. 2d at 521 (Bowen, J., dissenting) (identifying the prosecutor's reasons for striking jurors 56 and 60 as "highly suspect"). For example, besides age, the prosecutor gave two reasons for the peremptory strike of black juror number 60: (1) her father was either in prison or had been in federal prison on drug related crimes; and (2) she did not respond during voir dire when

---

[13] The prosecution's ex parte affidavit asserting a good faith mistake about Mr. Morris's marital status is not an adequate explanation for striking him. The affidavit was solicited long after the evidentiary hearing had concluded and without fair notice to or an opportunity to respond by Mr. Adkins. This type of evidence, not subjected to the crucible of adversary testing, has little weight. Neither can we ignore the fact that the prosecutor, with the benefit of the voir dire transcript and ample notice of the Batson hearing, clearly justified striking Mr. Morris because he was single at the Batson hearing. Indeed, we know from his testimony at the Batson hearing, the prosecutor had reviewed the transcript of the voir dire in preparation for the Batson hearing. Given these facts, and the strike rate of eighty-two percent of black jurors, a mere assertion of good faith that the prosecution believed Mr. Morris was single at the time of the Batson hearing is not sufficient to overcome the indication that the proffered reason was pretextual. Cf. Batson, 476 U.S. at 98, 106 S. Ct. at 1723–24 ("Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirm[ing] [his] good faith in making individual selections.") (quotation marks omitted).

jurors were "asked if they had any family member that had ever been in prison."

Id.  But as Judge Bowen observed in his dissent, "[t]o the extent that the strike of

prospective juror number 60 was based on the [prosecutor's] assessment that the

juror displayed a lack of forthrightness by failing to answer the voir dire question

about 'family member[s] in prison,' that assessment was not supported by the

record on voir dire."  Id. (alteration in original).  Indeed, the precise question asked

by the prosecutor during the voir dire was this: "[I]s there anyone on the jury panel

that has a relative or close friend, presently or in the past, in the State prison

system?"  Id.  Based on this, Judge Bowen reasoned, and we agree,

> A reasonable juror with a friend or relative in the federal penitentiary
> could conclude that the question dealt solely with the State prison
> system, as specified, especially since the [prosecutor] inquired further
> whether the fact that any of the jurors had a relative or friend in the
> state penal system "would . . . make [them] feel ill toward the
> [prosecutor] because possibly people like us are responsible for
> putting a relative or loved one or friend in prison?"

Id. (alteration in original).  While the prosecutor may have been justified in

striking juror 60 based on information that her father had been in prison, "[t]he

credibility of that reason, however, was called into question by the fact that the

district attorney failed to strike at least one white veniremember [juror 48] who

answered that he had a brother-in-law in prison.  That veniremember in fact served

on the jury."  Id.  (citation and footnote omitted).  Again, "[i]f a prosecutor's

proffered reason for striking a black panelist applies just as well to an otherwise-

similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson's third step." Miller-El II, 545 U.S. at 241, 125 S. Ct. at 2325.

In this same vein, we note that the state struck prospective black juror number 56 because he was 86 years old, could not hear well, and "acknowledged that he knew [defense counsel] personally." Adkins IV, 639 So. 2d at 521 (Bowen, J., dissenting) (alteration in original).  While each of these reasons may be facially race-neutral, two of them are suspect here.  The prosecutor's reliance on the fact that juror 56 knew defense counsel is suspect because the state did not strike a white verniremen, juror 48, who also acknowledged he knew defense counsel.  Id. Indeed, the prosecutor did not strike juror 48, and this juror served on the jury, even though he "shared two characteristics used [by the prosecutor] to justify the strikes of blacks—that he knew defense counsel and that he had a relative in prison."  Id.  at 522.  This is further indication, under the third step of the Batson analysis, that the prosecutor's stated reasons for striking black jurors were pretextual.  Id.

Similarly, and again under this required analysis, the prosecutor's reliance on juror 56's age is suspect in light of the fact that the prosecutor proffered "age" as a reason for striking six prospective black jurors, ranging in age from 31 to 86 years old: black juror 59, age 61; black juror 52 (age 32); black juror 36 (age 53);

32

black juror 56 (age 86); black juror 14 (age 36); and black juror 60 (age 31). With respect to age, the prosecutor stated during the <u>Batson</u> hearing that "the defendant was a single male and in that same age bracket of these people that were struck." Mr. Adkins was twenty-three years old at the time of voir dire. The prosecutor's "same age bracket" rationale clearly did not apply to all of the six black jurors struck by the prosecutor on this basis.

The prosecutor's reliance on age to strike prospective black jurors is also undermined by the fact that the state did not strike white jurors of similar age. For example, the prosecutor did not strike white juror 6 (age 44); white juror 13 (age 48); white jury 29 (age 48); white juror 28 (age 49); white juror 20 (age 58); and white juror 17 (age 62). The prosecutor's proffered justification of age as a reason to strike such a wide range of prospective black jurors who were clearly not in the "same age bracket" as Mr. Adkins, and the fact that white jurors of similar age were allowed to serve, supports our conclusion that the prosecutor's reliance on age was pretextual. This fact, when considered with all of the other relevant circumstances bearing on whether the defendant has proved purposeful discrimination, bolsters our conclusion that there was a <u>Batson</u> violation in Mr. Adkins's case.

## IV. Conclusion

For all these reasons, AEDPA deference does not apply to the state courts' unreasonable application of <u>Batson</u> and unreasonable determination of facts based on the state court record.  This record compels a finding that the state used its peremptory strikes in a discriminatory manner and violated Mr. Adkins's right to Equal Protection as clearly established by <u>Batson</u>.  <u>See</u> <u>McGahee</u>, 560 F.3d at 1270.  Any contrary finding would be inconsistent with the clear and convincing evidence.

The District Court's order denying Mr. Adkins habeas relief is reversed, and the case is remanded to the District Court with instructions to issue the writ of habeas corpus conditioned on the right of the State of Alabama to retry him.

**REVERSED and REMANDED.**

TJOFLAT, Circuit Judge, dissenting:

The issue in this appeal according to the certificate of appealability ("COA") the District Court issued[1] is "whether the State unconstitutionally exercised its peremptory challenges by striking African-American jurors on the basis of their race in violation of" Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712,  90 L. Ed. 2d 69 (1986).  The Alabama Court of Criminal Appeals decided that the strikes did not deny those jurors their right to serve on Ricky Dale Adkins's jury on account of their race.  Adkins v. State, 639 So. 2d 515 (Ala. Crim. App. 1993).  Adkins argues that the court's decision cannot be sustained because it is "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2) (2006), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996); the State argues to the contrary.  Today, this court adopts Adkins's position, reverses the District Court's decision adopting the State's position, and directs the District Court to issue a writ of habeas corpus setting aside Adkins's murder conviction and death sentence.  I am convinced the court errs in ordering that the writ issue and therefore dissent.

Although, on its face, the opinion of the Court of Criminal Appeals states that the court decided a Batson claim, the COA poses a Batson issue and the parties have briefed that issue, I submit that the Court of Criminal Appeals, though

---

[1] See 28 U.S.C. § 2253(c).

its opinion purports to do so, did not decide a Batson claim at all; rather, it decided a state law claim bearing the Batson label. Accordingly, because the Court of Criminal Appeals adjudicated a determination of state law, the District Court lacked Article III power to review that determination. The same is true of this court.

I explain why in part III of this opinion, after describing, in part I, the circumstances that led to Billy Dean Hamilton's murder and Adkins's conviction, and in part II, the Alabama Supreme Court's creation of the claim Adkins is asserting.

## I.

The Alabama Court of Criminal Appeals described how Mrs. Hamilton's murder occurred in Adkins v. State, 600 So. 2d 1054 (Ala. Crim. App. 1991) (as corrected on denial of rehearing).

Mrs. Hamilton was a realtor. During the morning of Sunday, January 17, 1988, she left her home to put out some real estate signs and to go to her office to do some paperwork. As she was putting out a sign, Adkins drove up in a Ford Bronco and told her that he was looking for a house to buy. She agreed to show him some that were for sale and got into his Bronco. According to Adkins at trial, after seeing three or four houses, "they stopped at a park, and 'held hands and kissed.'" Id. at 1058. They stayed there for about thirty minutes, then left to look

at more houses. "At one of the vacant houses they looked at, [Adkins] claim[ed],

Mrs. Hamilton voluntarily had sex with him twice." Id. That evening, after

visiting with the owners of one of the houses for sale, Mrs. Hamilton, according to

Adkins, "directed him down a dirt road for one last sexual encounter." Id. at 1059.

He put his sleeping bag on the ground and said that they "'talked about the stars

and the night.'" Id.

> [A]fter they finished having sex, he put the sleeping bag back in the
> Bronco and told Mrs. Hamilton to hurry and get dressed. [He] claims
> that [she] called him a "bastard" and that he told her that she was
> "nothing but a whore." At this, he said, [she] slapped him. [He]
> stated that as [she] bent over to pull her jeans up, he hit her in the back
> of the head with a wrench. [He] said he next remembered seeing his
> victim lying on the ground with blood on her body. He admitted
> slashing both of her wrists. He says he then got in the Bronco and
> left.

Id. Dr. Joseph Embry, a pathologist with the Alabama Department of

Forensic Sciences, performed the autopsy.

> Dr. Embry observed seven very deep lacerations to the victim's scalp.
> There was a stab wound to the upper abdomen which was six and a
> half inches long. It extended into the liver, stomach, and heart.
>         There were six small scratches on the victim's left buttock
> which were consistent with fingernail scratches. She also had a bruise
> on the inside of her left thigh. There were bruises, scrapes and
> lacerations on both hands. [He] testified that these were defense
> wounds.
>         When [he] examined the victim's oral cavity and lungs, her
> mouth and throat were filled with dirt and small rocks that went
> through her larynx all the way down into her lungs. It was this
> impacted dirt in the victim's airway, in association with the stab
> wounds and blunt force trauma to the head, that caused the victim's
> death. [He] testified that the incisions through the tendons of the

victim's wrists appeared to be post-mortem because there was no bleeding in the wounds.

Id. at 1059–60.

The jury convicted Adkins of capital murder and, by a vote of 10 to 2, recommended that he receive the death penalty. The Circuit Court followed the recommendation and sentenced Adkins to death. Adkins then appealed his conviction and sentence.

## II.

The Court of Criminal Appeals affirmed Adkins's conviction and death sentence on January 18, 1991. Adkins v. State, 600 So. 2d 1054, 1067 (Ala. Crim. App. 1991). The Alabama Supreme Court thereafter granted Adkins's petition for certiorari review. Ex parte Adkins, 600 So. 2d 1067, 1068 (Ala. 1992). While the case was being briefed in that court, the United States Supreme Court decided Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), which held that, under the Equal Protection Clause, "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races." Id. at 402, 111 S. Ct. at 1366 (internal quotation marks omitted) (emphasis added). Citing Powers, Adkins urged the Alabama Supreme Court to invoke Alabama's "plain error"

doctrine[2] and remand the case to the Circuit Court for a hearing on whether the prosecutor had used any of the State's peremptory challenges to discriminate against black members of the venire. The Supreme Court noticed plain error[3] and, after affirming "each of the issues presented to [the Court of Criminal Appeals]," Ex parte Adkins, 600 So. 2d at 1068, remanded the case for a hearing on the issue of whether, under Powers, "the State improperly exercised its peremptory challenges by striking black jurors on the basis of their race," id. at 1069.[4]

On remand, the Circuit Court, following the Alabama Supreme Court's instructions (albeit implicit), used the three-step inquiry the United States Supreme Court fashioned in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d

---

[2]  The plain error doctrine is a statutory creation to be used in capital cases in which the death penalty is imposed. Rule 45A, Alabama Rules of Appellate Procedure, "Scope of review in death cases," states:

> In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.

In Adkins's case, the Court of Criminal Appeals could not have noticed plain error on the basis of Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991), because Powers was decided after the court had affirmed Adkins's conviction and sentence.

[3]  The court cited Ex parte Bankhead, 585 So. 2d 112 (Ala. 1991), as its authority.

[4]   The Supreme Court remanded the case to the Court of Criminal Appeals; it, in turn, remanded the case to the Circuit Court for the hearing. Adkins v. State, 639 So. 2d 515 (Ala. Crim. App. 1993).

69 (1986),[5] in deciding whether the prosecutor peremptorily challenged the black jurors solely because of their race. The first step required Adkins to make a prima facie showing that the prosecutor "exclude[d] [an] otherwise qualified and unbiased person[ ] from the petit jury solely by reason of [his or her] race." Powers, 499 U.S. at 409, 111 S. Ct. at 1370. The Alabama Supreme Court had already made that prima facie showing for Adkins when, under the "plain error" doctrine, it ordered his case "remanded to the circuit court for a hearing on" the "Batson issue." Ex parte Adkins, 600 So. 2d at 1069. The Circuit Court therefore began with the second step of the inquiry, requiring the prosecutor to offer a race-neutral reason for each of his strikes. After the prosecutor came forward with his reasons, the court took the third step, inquiring whether Adkins had proven that the prosecutor had struck any of the nine blacks solely because of the person's race. At the conclusion of the inquiry, the court credited the prosecutor's representation that he struck the blacks for non-racial reasons and upheld the constitutionality of his strikes.

On return from remand, the Court of Criminal Appeals, "[a]fter a careful review of the reasons given by the prosecutor and after examining the testimony

---

[5] The three-step model in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), is akin to the model the Supreme Court created in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), for adjudicating Title VII claims of racial discrimination in employment, where, say, a member of a protected class claims that he or she was denied employment or a promotion due to race.

taken at the <u>Batson</u> hearing, . . . f[ound] that no <u>Batson</u> violation occurred."

<u>Adkins v. State</u>, 639 So. 2d 515, 517 (Ala. Crim. App. 1993).  The court therefore

affirmed the Circuit Court's judgment.  <u>Id.</u> at 520.

The majority of this panel faults the Court of Criminal Appeals' decision

because the Court of Criminal Appeals "did not give any consideration at <u>Batson</u>'s

third step to several relevant circumstances raised by Adkins in his brief on return

to remand to that court."  <u>Ante</u> at 16.  For example, the court gave "gave no

consideration to the strength of Adkins's prima facie case at <u>Batson</u>'s third step,"

<u>id.</u>; to "the fact that specific proffered reasons provided by the prosecutor were

contradicted by the record," <u>id.</u>; or to "the fact that the trial court relied on

evidence that was not tested by the adversarial process of cross-examination," <u>id.</u>

at 18, i.e., the prosecutor's affidavit stating that he "struck Morris under the

mistaken belief that he was single," <u>id.</u> at 18–19.  Given these shortcomings in the

Court of Criminal Appeals decision, the majority concludes that the Court of

Criminal Appeals "unreasonably applied <u>Batson</u> because it failed to consider

crucial facts which Adkins raised in his brief to that court relevant to <u>Batson</u>'s third

step," and therefore failed to review "'all relevant circumstances' as required by

<u>Batson</u>."  <u>Id.</u> at 21–22.  As a consequence, the Court of Appeals decision is

afforded no AEDPA fact-finding deference, <u>id.</u>; <u>see</u> 28 U.S.C. § 2254(e)(1) ("[A]

determination of a factual issue made by a State court shall be presumed to be

correct."), and this court reverses the judgment of the District Court, instructing the District Court "to issue the writ of habeas corpus conditioned on the right of the State of Alabama to retry Adkins." Ante at 31.

### III.

The federal habeas corpus statute, 28 U.S.C. § 2254, as amended by AEDPA, Pub. L. No. 104-132, 110 Stat. 1214 (1996), and interpreted by the United States Supreme Court, forbids a federal court from reviewing a state court conviction to grant a writ of habeas corpus unless the state court adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The phrase "clearly established Federal law" refers only to "the holdings, as opposed to the dicta," of the Supreme Court decisions extant at the time of the state court adjudication. Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000) (emphasis added).

The first task the District Court faced in this case in reviewing the Alabama Court of Criminal Appeals decision was to determine whether that court "adjudicated [a federal constitutional claim] on the merits." 28 U.S.C. § 2254(d). According to the parties, the Court of Criminal Appeals adjudicated a Powers claim using the Batson three-step inquiry. To possess a Powers claim or a Batson

claim, a defendant must have objected to the prosecutor's exercise of a peremptory challenge for a discriminatory purpose, to exclude the venireperson from jury service. See United States v. Tate, 586 F.3d 936, 943 (11th Cir. 2009) ("Under the law of this Circuit, a defendant forfeits a Batson claim if he or she fails to object on this ground in the district court.").[6] "[A] Batson objection must be exercised before the venire is dismissed and the trial commences." Id.[7] Requiring an objection prevents "sandbagging." United States v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998) ("The contemporaneous objection rule fosters finality of judgment and deters 'sandbagging,' saving an issue for appeal in hopes of having another shot at trial if the first one misses.").[8]

---

[6] It is of no consequence that Powers had not been decided at the time of Adkins's trial. For new rules of conduct of criminal trials to apply retroactively, defendants must preserve their constitutional claims with objections. See Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987); see also Jones v. Butler, 864 F.2d 348, 363–64 (5th Cir. 1988) (declining to excuse petitioner's failure to object to allegedly discriminatory peremptory strike even though Batson had not been decided at the time of his trial because "the claim was familiar and had been asserted in many other cases. . . . 'Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.'" (quoting Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575, 71 L. Ed. 2d 783 (1982))).

[7] In United States v. Tate, the appellant argued that the district court erred because it "failed to elicit or even provide counsel an[] opportunity to object." 586 F.3d 936, 943 (11th Cir. 2009). This court "declin[ed] the invitation" to create a new rule mandating that district courts provide counsel with an opportunity to raise Batson objections. Id. at 944.

[8] The majority notes that "state courts are free to fashion and enforce their own procedural rules to require that defendants make contemporaneous objections to preserve constitutional claims," ante at 12, but that Alabama courts did the opposite in this case—they excused Adkins's failure to object. The majority then notes that it is not our province to "dictate to the state courts of Alabama which procedural rules they should adopt." Ante at 15. Although it is true that Alabama courts are free to allow an equal-protection challenge to a peremptory strike without a contemporaneous objection as a matter of state law, they are not free to excuse

43

Adkins did not have a <u>Powers</u> claim because he did not object to any of the prosecutor's peremptory strikes.[9]  That the Circuit Court on remand and the Court of Criminal Appeals on return to remand may have thought they were deciding a <u>Powers</u> claim does not mean that Adkins had a viable <u>Powers</u> claim—that <u>Powers</u>'s holding required the Alabama Supreme Court to remand the case for a <u>Batson</u> hearing.  What those courts were doing on remand was resolving an equal protection of the laws issue—whether any of the nine blacks were struck from the venire due to race—using <u>Batson</u>'s three-step inquiry.

An equal protection issue like the one in <u>Ex parte Adkins</u> arises whenever the Court of Criminal Appeals (or the Supreme Court on certiorari review as in <u>Ex</u>

---

the requirement of an objection <u>as a matter of federal constitutional law</u>.  The Supreme Court has never explicitly defined "timely" in the context of a <u>Batson</u> challenge, but several of our sister circuits have noted that the Supreme Court in <u>Batson</u> plainly envisioned an objection during jury selection. These circuits have refused to grant a writ of habeas corpus where the petitioner did not preserve his claim with an objection.  See <u>Haney v. Adams</u>, 641 F.3d 1168, 1169 (9th Cir. 2011) (holding that a petitioner may not bring a <u>Batson</u> claim in his habeas petition if he did not object to the peremptory strikes during his state trial); <u>McCrory v. Henderson</u>, 82 F.3d 1243, 1249 (2d Cir. 1996) (reversing a district court's grant of a writ of habeas corpus where the defendant did not preserve his claim of a discriminatory peremptory strike with a contemporaneous objection); <u>Jones v. Butler</u>, 864 F.2d 348, 369 (5th Cir. 1988) (denying rehearing en banc regardless of whether Louisiana state courts applied a state procedural bar because "a contemporaneous objection to the use of peremptory challenges to exclude jurors on the basis of race is a necessary predicate to later raising a <u>Batson</u> claim").  Because Adkins did not meet this "necessary predicate" to a federal constitutional claim, he may not ask for federal habeas relief.

[9] The Alabama Supreme Court would undoubtedly agree that if <u>Adkins</u> were not a death case reviewed under Rule 45A, Alabama Rules of Appellate Procedure, Adkins would not have a <u>Powers</u> claim—because he did not object to any of the prosecutor's strikes. This underscores my point that, in <u>Ex parte Adkins</u>, the Alabama Supreme Court fashioned an equal protection rule that applies only in death cases.  The rule does not apply in non-death cases.  In those cases, a defendant cannot seek a remand for a <u>Batson</u> hearing unless he objected to the prosecutor's peremptory strike before the jury is empaneled.

parte Adkins), in discharging its statutory obligation to search the record in death cases for plain error, [10] finds that the defendant had grounds to object to the prosecutor's strike of a prospective juror due to the juror's race, but did not. Once that finding is made, the case must be remanded to the trial court for a Batson hearing. At the hearing on remand, because a prima facie case of race discrimination has already been found by the appellate court, the trial court begins with Batson's second step, and if the prosecutor provides race-neutral reasons for the strikes at issue, the court moves to the third step and determines "whether the defendant has carried his burden of proving purposeful discrimination." Floyd v. State, — So. 3d —, 2012 WL 6554696, at *1 (Ala. Crim. App. Dec. 14, 2012) (quoting Hernandez v. New York, 500 U.S. 352, 359, 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395 (1991)) (internal quotation marks omitted).

The Alabama courts refer to this plain error-generated equal protection issue as a Powers claim or a Batson claim. Where the equal protection issue is gender-based, the courts refer to the issue as a J.E.B. claim. See J.E.B. v. Alabama, 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994) (applying Batson and Powers to gender-based discrimination).

In Ex parte Floyd, — So. 3d —, 2012 WL 4465562, at * 6–11 (Ala. Sept. 28, 2012) (Murdock, J., concurring in the result), Justice Murdock, criticizing the

---

[10] If the Court of Criminal Appeals has not found sufficient indicia to create an inference of unlawful discrimination, there would be no reason to remand the case for a Batson hearing.

Supreme Court's creation of this equal protection claim by noticing plain error, explained why the claim is not rooted in the Batson, Powers, and J.E.B., decisions but, instead, was the court's creation.  In that case, Christopher Anthony Floyd was convicted of capital murder and sentenced to death.  On appeal, Floyd argued that the prosecutor had exercised the State's peremptory challenges to strike blacks and women from the venire for the purpose of excluding them from jury service on account of their race and sex.  Floyd v. State, 2007 WL 2811968, at *1 (Ala. Crim. App. Sept. 28, 2007).  Floyd had not objected to the strikes in the trial court, and therefore asked the Court of Criminal Appeals to notice plain error, citing Batson, Powers, and J.E.B.  The Court of Criminal Appeals concluded that the record established an inference of purposeful race- and gender-based discrimination and remanded the case to the trial court for a Batson hearing.  Id. at *3.

On remand, the trial court found that the prosecutor's reasons for the strikes were race- and gender-neutral.  On return to remand, the Court of Criminal Appeals affirmed the trial court's findings and affirmed Floyd's murder conviction and death sentence.  Id. at *33 (opinion on return to remand, Aug. 29, 2008).

On writ of certiorari, the Alabama Supreme Court reversed and instructed the Court of Criminal Appeals to remand the case again to the trial court for findings of fact and conclusions of law as to whether the prosecutor's reasons for striking blacks and women were race- and gender-neutral and whether the

46

defendant had carried his burden of proving purposeful discrimination.  Ex parte

Floyd, — So. 2d —, 2012 WL 4465562, at *6 (Ala. Sept. 28, 2012).[11]

Justice Murdock, joined by Justices Malone and Bolin, concurred in the

result but opposed the practice of giving defendants who had waived their Batson,

Powers, and J.E.B. objections at trial an opportunity for a Batson hearing in the

trial court for the purpose of having the State offer nondiscriminatory reasons for

its peremptory strikes.  In Justice Murdock's opinion, what his court was doing

was contrary to the holdings in Batson and its progeny:

> [T]he three-step evidentiary inquiry prescribed by Batson as a tool for
> ferreting out purposeful discrimination was intended only for use in
> "real time" during the trial in which the alleged discrimination occurs
> and . . . the right to initiate a Batson inquiry is waived if not exercised
> contemporaneously with the selection of the jury and cannot be
> revived based on a plain-error review in an appeal after the trial is
> concluded.

Floyd, 2012 WL 4465562, at *6 (Murdock, J., concurring).  Justice Murdock

> found no federal cases that hold to the contrary or that even stand as
> contrary physical precedent.  That is, I have found no federal cases in
> which the court has used a "plain error" review to initiate a Batson
> inquiry on appeal when the defendant failed to initiate that inquiry
> during the trial.  There appear to be good reasons why it is so difficult
> to find such a case.

Id. (emphasis in original).  In his view,

_____

[11]   The Court of Criminal Appeals, on receipt of the Supreme Court's mandate,
remanded the case to the trial court with the Supreme Court's instructions.  Floyd v. State, — So.
3d —, 2012 WL 6554696 (Ala. Crim. App. Dec. 14, 2012).

47

[T]here [we]re sound "policy" reasons why a Batson inquiry, if it is to be conducted, must be conducted at trial contemporaneously with the jury-selection process that is its subject. If the inquiry is launched before the jury is sworn or before the venire is excused, remedies other than reversal and retrial are available. More importantly, in most cases, the type of inquiry contemplated by Batson simply cannot be undertaken in any meaningful way months or years after the trial. Pretrial research regarding jurors and real-time notes taken during voir dire may have been lost, and, more importantly, unwritten memories and impressions of body language, voice inflections, and the myriad of other nuances that go into striking jurors likely will have faded, not only for counsel, but also for the judge who must evaluate the positions of both the defendant and the prosecutor in the context of his or her own observations at trial (and who, in some cases, will have even left the bench in the meantime).

Id. at *7.  Justice Murdock amplified the Batson Court's recognition that "'a finding of intentional discrimination is a finding of fact' and that 'the trial judge's findings . . . largely will turn on evaluation of credibility,'" id. at *8, with this quotation from Snyder v. Louisiana:

The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation of the prosecutor's credibility, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge."  In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie "peculiarly within a trial judge's province," and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court]."

48

552 U.S. 472, 477, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008) (internal citations omitted) (emphasis in original).

An obvious reason for abandoning this plain error practice in cases like Adkins and Floyd is the effect it must have on trial judges in capital cases. Nothing is more onerous for trial judges than having to try a criminal case twice, especially a capital case in which the State is seeking the death penalty. Because the holdings in Batson, Powers, and J.E.B. condemn the discriminatory exercise of peremptory challenges based on race and gender, a trial judge, to ensure that the case will not be remanded for a Batson hearing, will be tempted to require the prosecutor to provide race- or gender-neutral reasons for many if not all of the State's strikes.[12] The practical effect of the possibility of a later Batson hearing would be to eliminate the peremptory challenge in death cases. Nothing in Batson, Powers, or J.E.B. requires the Alabama courts to go to that extreme.[13]

------

[12] Defense counsel, who like the prosecutor is a state actor when exercising peremptory strikes, Edmonson v. Leesville Concrete Co., 500 U.S. 614, 628, 111 S. Ct. 2077, 2087, 114 L. Ed. 2d 660 (1991), also denies a venireperson the equal protection right to jury service when not objecting to what appears to be an unconstitutional strike. The Supreme Court's opinion remanding Adkins's case for a Batson hearing is silent regarding the relevance of evidence that defense counsel, in failing to object, might be complicit in the presumed racial discrimination by the State.

[13] One of the reasons why the Batson, Powers, and J.E.B. holdings do not go to such an extreme is this: When defense counsel does not object to the prosecutor's strike, defense counsel is indirectly informing the court that it would be in the best interest of counsel's client that the challenged venireperson not serve on the jury, that, in counsel's mind, it is doubtful whether the venireperson would be impartial and reach a fair verdict. Given this evidence—the failure to object and the communication it yields—the inference that the venireperson is being challenged in violation of the Equal Protection Clause is problematic. If that inference is problematic,

The majority treats the Alabama Court of Criminal Appeals decision as having adjudicated a federal constitutional claim on the merits for purposes of § 2254(d) because the State, in the District Court and in its brief on appeal, agreed that the decision adjudicated a Batson claim. It argues that United States v. Nealy, 232 F.3d 825 (11th Cir. 2000), and United States v. Ardley, 242 F.3d 989 (11th Cir. 2001), therefore bar the State from switching positions and arguing that the decision at issue adjudicated a state law claim.

Our decisions in Ardley and its progeny involve direct appeals of federal court convictions, not habeas petitions. In the Ardley appeal, we declined to retroactively apply the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which was decided after the appellant was convicted but before his conviction became final, because he had not raised the Apprendi issue in his opening brief on appeal. 273 F.3d at 1007. Since Ardley, we have repeatedly followed the prudential rule that we will not consider the merits of issues not raised in the opening brief, even where they would be resolved in appellant's favor but for his failure to anticipate the new rule of law in his opening brief. See United States v. Levy, 391 F.3d 1327, 1328 (11th Cir. 2004) (denying appellant's petition for rehearing after his conviction had become final because he had failed to raise a claim under Blakely v. Washington, 542 U.S. 296,

---

whether the inference is strong enough to establish a case of unlawful discrimination is likewise problematic.

124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), until his petition for rehearing); United States v. Dockery, 401 F.3d 1261, 1262–63 (11th Cir. 2005) (holding that the appellant had abandoned his claim under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), by failing to address the claim Booker created in his opening brief on appeal); United States v. Vanorden, 414 F.3d 1321, 1323 (11th Cir. 2005) (holding that appellant had abandoned any Apprendi-Blakely-Booker claim by failing to brief it); United States v. Higdon, 418 F.3d 1136, 1137 (11th Cir. 2005) (Hull, J., concurring in denial of rehearing en banc) (declining to reconsider panel's denial of appellant's motion to file a supplemental brief raising a claim under Blakely).

Although these decisions would seem at first blush to bar our consideration of the State's argument that the Court of Criminal Appeals did not adjudicate a federal constitutional claim, I submit that the prudential rule on which they are based must give way to the policies AEDPA seeks to implement, namely the interests of federalism, comity and finality of state criminal convictions. See Federal Habeas Corpus Reform: Eliminating Prisoners' Abuse of the Judicial Process: Hearing before the S. Comm. on the Judiciary, 104th Cong. 1, 10, 23, 30–31 (1995) (statements of Sen. Orrin Hatch; Lee Chancellor, Vice President, Citizens for Law and Order, Oakland, Calif.; Sen. Strom Thurmond; and Daniel E. Lungren, California Attorney General). As I have written before, waiver "applies

to the <u>right</u> of a litigant to have his claim heard. . . .  The scope of a petitioner's <u>rights</u> has no bearing on this court's <u>power</u>.  It is beyond dispute that, in general, we have the power to consider issues that a party fails to raise on appeal, even though the petitioner does not have the right to demand such consideration." <u>Thomas v. Crosby</u>, 371 F.3d 782, 793 (11th Cir. 2004) (Tjoflat, J., specially concurring).  The Supreme Court has said, "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." <u>Singleton v. Wulff</u>, 428 U.S. 106, 121, 96 S. Ct. 2868, 2877, 49 L. Ed. 2d 826 (1976).

Our task in this case is to determine whether the Alabama Court of Criminal Appeals decision falls within § 2254(d)(1) or (2).[14]  In the context of a habeas petition, we would be remiss if we did not consider <u>sua</u> <u>sponte</u> whether the petitioner has a federal constitutional claim.  Because Adkins did not object to the allegedly discriminatory peremptory strikes, he did not preserve his <u>Powers</u> claim.  The Alabama courts thus adjudicated a state law claim, and we should not grant federal habeas relief under AEDPA.

---

[14]  <u>See</u> <u>Harrison v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) ("Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.").

In sum, the Alabama Court of Criminal Appeals decision under consideration did not adjudicate a claim contrary to a holding of the United States Supreme Court.  For that reason, the judgment of the District Court should be affirmed.